# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| K.H., et al., | ) | |
| | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. 1:19-cv-3124-TFH |
| | ) | |
| v. | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| THE DISTRICT OF COLUMBIA, et al., | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

## PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Samantha Badlam (D.C. Bar #977190)
Peter Brody (D.C. Bar # 398717)
Scott McKeown (D.C. Bar # 314459)
ROPES & GRAY LLP
2099 Pennsylvania Ave NW
Washington, DC 20006
Telephone:  (202) 508-4600
Facsimile:  (202) 508-4650
samantha.badlam@ropesgray.com
peter.brody@ropesgray.com
scott.mckeown@ropesgray.com

Marla Spindel (D.C. Bar # 443306)
Stephanie McClellan (D.C. Bar # 485658)
DC KinCare Alliance
1101 Connecticut Avenue, NW, Suite 450
Washington, DC 20006
marla@dckincare.org
stephanie@dckincare.org

*Attorneys for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ......................................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 3

ARGUMENT ................................................................................................................................. 4

I.      STANDARD OF REVIEW ............................................................................................... 4

II.     DEFENDANTS' MOTION RELIES ON AN INCORRECT INTERPRETATION
        OF THE D.C. CHILD ABUSE AND NEGLECT ACT. ................................................... 5

III.    PLAINTIFFS STATE A CLAIM UNDER THE SOCIAL SECURITY ACT ................... 7

        A.      The provisions of the Social Security Act under which Plaintiffs bring their
                claims pass the Supreme Court's test set out in Blessing and Gonzaga for
                whether a statute provides a private right of action. .............................................. 7

        B.      Plaintiffs have an enforceable right via § 1983 to foster care maintenance
                payments under § § 672(a) and 675(4)(A) of the SSA. ....................................... 10

                1.      Plaintiffs have stated a claim that they are entitled to foster care
                        maintenance payments ............................................................................. 15

                2.      Defendants should be equitably estopped from arguing that the SSA
                        does not apply to children in Plaintiffs' circumstances ........................... 17

        C.      Plaintiff Children have an enforceable right via § 1983 to receive a case plan
                that is reviewed under the state's case review system pursuant to §§
                671(a)(16), 675(1), 675(5) of the SSA ................................................................. 19

        D.      Plaintiff Caregivers have an enforceable right via § 1983 to receive notice of
                their options to participate in the care and placement of Plaintiff Children
                under 42 U.S.C. § 671(a)(29) of the SSA. ............................................................ 22

        E.      Plaintiff Children have an enforceable right via § 1983 to receive services to
                protect the child's safety and health under § 671(a)(22) of the SSA. ................... 25

        F.      Plaintiff Children have an enforceable right via § 1983 to be placed in a
                foster care home that meets standards for safety, sanitation, and non-
                discrimination under § 671(a)(10) of the SSA. ..................................................... 27

IV.     PLAINTIFFS ADEQUATELY ALLEGE DEFENDANTS' ILLEGAL PRACTICE
        OF KINSHIP DIVERSION VIOLATES THE EQUAL PROTECTION CLAUSE ........ 30

V.      PLAINTIFFS ADEQUATELY ALLEGE DEFENDANTS' ILLEGAL PRACTICE
        OF KINSHIP DIVERSION VIOLATES PLAINTIFFS' DUE PROCESS RIGHTS ...... 32

VI.     PLAINTIFFS ADEQUATELY ALLEGE CLAIMS OF INTENTIONAL
        DISCRIMINATION ON THE BASIS OF FAMILIAL STATUS UNDER THE
        DISTRICT OF COLUMBIA HUMAN RIGHTS ACT ("DCHRA") ............................. 35

VIII.   PLAINTIFFS HAVE ADEQUATELY PLEADED A CLAIM FOR FRAUDULENT
        MISREPRESENTATION ................................................................................................ 39

IX.     PLAINTIFFS HAVE ADEQUATELY STATED A CLAIM FOR NEGLIGENT
        MISREPRESENTATION ................................................................................................ 43

CONCLUSION.............................................................................................................. 45

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*31 Foster Children v. Bush*,
329 F.2d 1255 (11th Cir. 2003) ...........................................................13

*3883 Connecticut LLC v. Dist. of Columbia*,
336 F.3d 1068 (D.C. Cir. 2003) ...........................................................30

*Aguilar v. RP MRP Wash. Harbour, LLC*,
98 A.3d 979 (D.C. 2014) .....................................................................38

*Estate of Amaro v. City of Oakland*,
653 F.3d 808 (9th Cir. 2011) (finding equitable estoppel applied "where a
plaintiff believes she has a 42 U.S.C. § 1983 claim but is dissuaded from
bringing the claim by affirmative misrepresentations and stonewalling by the
police,") ...........................................................................................18, 19

*Armstrong v. Exceptional Child Center, Inc.*,
575 U.S. 320 (2015) .............................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................4

*Banneker Ventures LLC v. Graham*,
798 F.3d 1119 (D.C. Cir. 2015) .............................................................5

*Bd. of Regents of State Colls. v. Roth*,
408 U.S. 564 (1972) .............................................................................33

*Berman v. Young*,
291 F.3d 976 (7th Cir. 2002) ...............................................................34

*Brian A. v. Sundquist*,
149 F. Supp. 2d 941 (M.D.Tenn. 2000) ...............................................28

*Cal. State Foster Parent Ass'n v. Wagner*,
624 F.3d 974 (9th Cir. 2010) ...............................................10, 11, 12, 14

*Clark K. v. Guinn*,
No. 2:06-CV-1068-RCJ-RJJ, 2007 WL 1435428 (D. Nev. May 14, 2007) ...........................26

*Connor B. v. Patrick*,
771 F. Supp. 2d. 142 (D.Mass. 2011) .............................................12, 21

*D'Ambrosio v. Colonnade Council of Unit Owners*,
   717 A.2d 356 (D.C. App. 1998)..................................................................42, 43

*In Re D.M.*,
   84 A.3d 584 (D.C. 2014) ............................................................................6

*D.O. v. Glisson*,
   847 F.3d 374 (6th Cir.), *cert. denied*, 138 S. Ct. 316 (2017)................11, 12, 14, 15

*In re D.S.*,
   88 A.3d 678 (D.C. 2014) ............................................................................6

*Daisley v. Riggs Bank, N.A.*,
   372 F. Supp. 2d 61 (D.D.C. 2005) ..........................................................42, 43

*District of Columbia v. Turner*,
   532 A.2d 662 (D.C. 1987) ........................................................................37, 39

*DuBerry v. Dist. of Columbia*,
   824 F.3d 1046 (D.C. Cir. 2016) ................................................................7, 23

*Estenos v. PAHO/WHO Federal Credit Union*,
   952 A.2d 878 (D.C. 2008) ........................................................................35

*Falconi-Sachs v. LPF Senate Square, LLC.*
   142 A.3d 550 (D.C. 2016) (*per curiam*) ..................................................44

*Furcron v. United States*,
   626 F. Supp. 320 (D. Md. 1986) ..............................................................18

*GAO v. Gen. Accounting Office Pers. Appeals Bd.*,
   698 F.2d 516 (D.C. Cir. 1983) ..................................................................17

*Garnett v. Zeilinger*,
   323 F. Supp. 3d 58 (D.D.C. 2018) ............................................................22

*George Washington Univ. v. D.C. Bd. Of Zoning Adjustment*,
   831 A.2d 921 (D.C. 2003) ........................................................................35

*Golden State Transit Corp. v. City of Los Angeles*,
   493 U.S. 103 (1989)..................................................................................9

*Gonzaga Univ. v. Doe*,
   536 U.S. 273 (2002)........................................................................ *passim*

*Grissom v. Dist. of Columbia*,
   853 F. Supp. 2d 118 (D.D.C. 2012) ..........................................................30

*Henry A. v. Willden*,
    678 F.3d 991 (9th Cir. 2012) (stating that "Section 671(a)(16) unambiguously
    requires the State to provide for the development of a case plan for each child"
    and holding that "the case plan provisions are enforceable through § 1983.") ......................21

*Hurd v. Dist. of Columbia*,
    864 F.3d 671 (D.C. Cir. 2017) ................................................................................................5

*Jackson v. Dist. of Columbia Bd. of Elections and Ethics*,
    999 A.2d 89 (D.C. 2010) ......................................................................................................35

*Lamaster v. Ind. Dep't of Child Servs.*
    No. 4:18-cv-00029-RLY-DML, 2019 U.S. Dist. LEXIS 45747 (S.D. Ind. Mar.
    20, 2019) ...............................................................................................................................12

*LaShawn A. v. Bowser*,
    Civil Action No. 89-1754 (TFH) .............................................................................6, 9, 27, 28

*LaShawn A. v. Dixon*,
    762 F. Supp. 959 (D.D.C. 1991), *aff'd and remanded sub nom. LaShawn A. ex
    rel. Moore v. Kelly*, 990 F.2d 1319 (D.C. Cir. 1993)...........................................................9, 28

*Yvonne L. ex rel. Lewis v. New Mexico Dep't of Human Servs.*,
    959 F.2d 883 (10th Cir. 1992) .....................................................................................27, 28, 29

*Lynch v. Dukakis*,
    719 F.2d 504 (1st Cir. 1983)..................................................................................................21

*Marisol A. v. Giuliani*,
    929 F. Supp. 662 (S.D.N.Y. 1996) *aff'd* 126 F.3d 372 (2d Cir. 1997).......................21, 28, 33

*McNair v. District of Columbia*,
    213 F. Supp. 3d 81 (D.D.C. 2016) .....................................................................................36, 37

*Melton v. District of Columbia*,
    85 F. Supp. 3d 183 (D.D.C. 2015) ..........................................................................................10

*Midwest Foster Care & Adoption Ass'n v. Kincade*,
    712 F.3d 1190 (8th Cir. 2013) .............................................................................................8, 12

*Miller v. Youakim*,
    440 U.S. 125 ..................................................................................................................15, 30, 31

*Moore v. Kelly*,
    990 F.2d 1319 (D.C. Cir. 1993).................................................................................................9

*Morris Commc'ns, Inc. v. FCC*,
    566 F.3d 184 (D.C. Cir. 2009).................................................................................................17

*Morrissey v. Brewer*,
    408 U.S. 471 (1972)........................................................................................33

*Murphy v. Baker*,
    No. 15-30187-MGM, 2017 WL 2350246 (D. Mass. May 4, 2017) ........................................24

*N.Y. State Citizens' Coal. for Children v. Poole*,
    922 F.3d 69 (2d Cir. 2019)............................................................................ *passim*

*Estate of Place v. Anderson*,
    398 F. Supp. 3d 816 (D. Colo. 2019).....................................................................27

*Rogers v. Exec. Office for US Attorneys*,
    No. CV 18-454 (RBW), 2019 WL 1538252 (D.D.C. Apr. 9, 2019) ......................................17

*Salazar v. Dist. of Columbia*,
    729 F. Supp. 2d 257 (D.D.C. 2010) .................................................................22, 23

*Sundberg v. TTR Realty, LLC*,
    109 A.3d 1123 (D.C. 2015) .......................................................................39, 43, 44

*Suter v. Artist M.*,
    503 U.S. 347 (1992).............................................................................9, 10, 14, 28

*Town of Castle Rock v. Gonzales*,
    545 U.S. 748 (2005)..................................................................................32, 33

*Va. Acad. of Clinical Psychologists v. Grp. Hospitalization & Med. Servs., Inc.*,
    878 A.2d 1226 (D.C. 2005) ..............................................................................41

*Connor B. ex rel. Vigurs v. Patrick*,
    774 F.3d 45 (1st Cir. 2014)................................................................................21

*Village of Willowbrook v. Olech*,
    528 U.S. 562 (2000) (per curiam)........................................................................30

*White v. Chambliss*,
    112 F.3d 731 (4th Cir. 1997) .........................................................................28, 29

*Whitt v. Am. Prop. Constr., P.C.*,
    157 A.3d 196 (D.C. 2017) ................................................................................38

*Wilder v. Va. Hosp. Ass'n*,
    496 U.S. 498 (1990)............................................................................... *passim*

*Kenny A. ex rel. Winn v. Perdue*,
    218 F.R.D. 277 (N.D. Ga. 2003)......................................................................25, 26

*Wright v. City of Roanoke Redevelopment and Housing Auth.*,
479 U.S. 418 (1987)............................................................................................11, 24, 25

**Statutes**

42 U.S.C. ...........................................................................................................................22

42 U.S.C. § 670 *et. seq.*..................................................................................................1

42 U.S.C. §§ 671(a)(10), 671(a)(16), 671(a)(22), 671(a)(29) ........................................8

42 U.S.C. § 671(a)(11) ...................................................................................................11

42 U.S.C. § 671(a)(12) ...................................................................................................33

42 U.S.C. § 671(a)(15) ................................................................................................9, 10

42 U.S.C. §§ 671(a)(16), 671(a)(29), 672(a), 675(1)(A) ..............................................33

42 U.S.C. §§ 672(a) and 675(4)(A)
...............................................................................................................10, 12, 14, 15

42 U.S.C. § 1320a-2 ..............................................................................................9, 10, 28

42 U.S.C. § 1983 ..................................................................................................... *passim*

205. Because the Child Abuse Act ................................................................................38

Adoption Assistance and Child Welfare Act of 1980 and the Adoption and Safe
Families Act of 1997.....................................................................................................1

Child Abuse Act.....................................................................................................5, 37, 38

*Child Abuse and Neglect Act of 1977*, § 4-1303.04(a) .............................................5, 6

Child and Family Services Agency Establishment Amendment Act of 2000, Pub.
L. L13-277 (Apr. 2001) ...............................................................................................5

D.C. Child Abuse and Neglect Act.............................................................................1, 5

D.C. Code § 2-1401.02(11A)..........................................................................................35

D.C. Code § 2-1402.73 ...................................................................................................35

D.C Human Rights Act ....................................................................................................2

D.C. Protection of Child Abuse and Neglect Act of 1977.............................................5

DCHRA.....................................................................................................................35, 36

DISTRICT OF COLUMBIA HUMAN RIGHTS ACT....................................................35

Family Educational Rights and Privacy Act ...............................................................11

Federal Housing Act and the Medicaid Act................................................................11

Human Rights Act........................................................................................................35

Medicaid Act................................................................................................................14

Preventing Sex Trafficking and Strengthening Family Act, Pub. L. No. 113-183,
        128 Stat 1919 (Sept. 29, 2014)..........................................................................29

Social Security Act ........................................................................................................1

Social Security Act ...............................................................................................1, 7, 14

Social Security Act Section 672(a)....................................................................... *passim*

SSA .......................................................................................................................*passim*

STATE A CLAIM UNDER THE SOCIAL SECURITY ACT...........................................7

**Other Authorities**

Fifth Amendment ...........................................................................................................2

Fourteenth Amendment ............................................................................................2, 32

*Blessing*, § 671(a)(10)..................................................................................................27

Fed. R. Civ. P. 8(a)(2).....................................................................................................4

Federal Rules of Civil Procedure Rule 9(b)................................................................40

Rule 9 ......................................................................................................................42, 43

Rule 9(b)'s ...................................................................................................................40

Rule 12(b)(6).............................................................................................................1, 4

U.S. Const. amend. XIV, § 1 .......................................................................................32

U.S. Constitution............................................................................................................1

Plaintiffs K.H., K.J., M.M., L.E., L.C., and T.C.[1] respectfully submit this memorandum of points and authorities in opposition to the District of Columbia ("DC") and the DC Child and Family Services Agency's ("CFSA"), (collectively, the "Defendants") Motion to Dismiss Plaintiffs' Amended Complaint (the "Motion to Dismiss" or "Motion" and the memorandum of points and authorities submitted in support thereof).  For the reasons stated herein, Defendants' Motion to Dismiss should be denied.

## INTRODUCTION

Defendants for at least the last 10 years have consistently and repeatedly engaged in the custom and practice of kinship diversion, ignoring the obligations imposed by law on Defendants to remove and place abused and neglected children in a licensed foster home and provide continued support both to these children and their relative caregivers, financially and otherwise. As a result, Plaintiffs are deprived of the benefits and services to which they are legally entitled under the Social Security Act ("SSA")[2] and the D.C. Child Abuse and Neglect Act.  Further, as stated in the Amended Complaint and explained more fully below, such deprivation constitutes a violation of the U.S. Constitution and federal and D.C. law. To remedy the harm caused by Defendants and prevent any further violations of Plaintiffs' rights, Plaintiffs seek declaratory, injunctive, and monetary relief.

Defendants' arguments for dismissal for failure to state a claim under Rule 12(b)(6) have no merit. Defendants' central argument is premised on the fact that Plaintiffs are not entitled to relief because Plaintiff Children were not removed and placed into foster care in accordance with

---

[1] Plaintiffs K.H., M.M., and L.C. (the "Plaintiff Caregivers") and Plaintiffs K.J., L.E., and T.C. (the "Plaintiff Children," and together with the Plaintiff Caregivers the "Plaintiffs").

[2] For purposes of this memorandum, the term "SSA" means Title IV-E of Social Security Act, enacted at 42 U.S.C. § 670 *et. seq.*, as amended by the Adoption Assistance and Child Welfare Act of 1980 and the Adoption and Safe Families Act of 1997.

the legally-required removal and placement procedures.  This argument, however, conveniently disregards the fact that it was Defendants' responsibility to take such actions, and highlights the fact that Defendants are instead operating outside the statutorily designated foster-care requirements in order to avoid their obligations to children and caregivers.  Defendants cannot intentionally ignore the actions they are obligated by law to take and then later claim that Plaintiffs are not entitled to any benefits or services because of Defendants' willful violation of law. This circular reasoning undermines Defendants' obligation to protect children vulnerable to abuse and neglect and is insufficient to warrant a 12(b)(6) dismissal.

Contrary to the arguments set forth in the Motion, Plaintiffs have adequately pleaded their claims for relief.  Plaintiffs have adequately alleged that, by engaging in the custom and practice of kinship diversion, Defendants have deprived Plaintiffs of the foster care maintenance payments, case plans, and services they are entitled to under the SSA.  Consistent with the weight of authority, these SSA provisions confer a privately enforceable right under 42 U.S.C. § 1983.  Plaintiffs have also adequately alleged that Defendants have intentionally, and without rational basis, denied Plaintiffs of the processes, benefits, and services that are afforded to similarly situated abused and neglected children who have been placed with non-relative caregivers, in violation of Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment and the D.C Human Rights Act.  Further, Plaintiffs have averred that, by failing to follow the legally-required removal and placement procedures and provide Plaintiffs with the benefits and services they are entitled to, Defendants have deprived Plaintiffs of protected liberty or property interests without due process of law in violation of the Due Process Clause of the Fifth Amendment. Additionally, Plaintiffs have alleged that by such conduct, Defendants' have breached the duty of care that they owed to Plaintiff Children under D.C. law, causing injury to Plaintiffs, and accordingly, Defendants'

actions constitute negligence. Finally, Plaintiffs have alleged with specificity that Plaintiff Caregivers relied, to their detriment, on Defendants' false representations and willful omissions regarding the removal and placement of the Plaintiff Children and that Defendants' actions constitute fraudulent and negligent misrepresentation.

In short, none of the arguments raised by Defendants in their Motion have merit, and the Motion should be denied.

## STATEMENT OF FACTS

In October 2018, Defendants determined that Plaintiff K.J., a six-year-old girl, had been abused and neglected and could not be protected in her mother's home through the provision of services. Am. Comp. ¶ 4. As a result, Defendants removed K.J. from her mother's home and informally and illegally placed K.J. through kinship diversion in the care of her maternal aunt, Plaintiff K.H. *Id.* ¶ 48. Defendants deliberately did not inform K.H. of her option to become a licensed foster parent for K.J., and instead pressured and misled K.H. into filing an emergency motion for custody by making her believe K.J. would be placed in foster care with a stranger if she failed to do so. *Id.* ¶ 50. Following this placement, Defendants have failed to provide the foster care subsidy and associated services to K.J. or K.H. and have failed to license K.H. as a foster parent. *Id.* ¶¶ 54-56.

In February 2019, Defendants determined that Plaintiff L.E., a one-year-old girl, had been abused and neglected and could not be protected while in her mother's care through the provision of services. *Id.* ¶ 5. As a result, Defendants removed L.E. from her mother's care and informally and illegally placed her through kinship diversion in the care of her maternal great-aunt, Plaintiff M.M. *Id.* Defendants deliberately did not inform M.M. of her option to become a licensed foster parent for L.E., and instead pressured and misled M.M. into filing an emergency motion for custody by making her believe L.E. would be placed in foster care with a stranger if she failed to

do so. *Id.* ¶ 66. Following this placement, Defendants have failed to provide the foster care subsidy and associated services to M.M. or L.E. and have failed to license M.M. as a foster parent. *Id.* ¶¶ 69, 74-75.

In March 2019, Defendants determined that Plaintiff T.C., a fifteen-year-old boy, and his siblings had been abused and neglected and could not be protected in their mother's home. *Id.* ¶ 6. As a result, Defendants removed T.C. and four of his siblings from their mother's home and informally and illegally placed them through kinship diversion in the care of their paternal grandmother, Plaintiff L.C. *Id.* Defendants deliberately did not inform L.C. of her option to become a licensed foster parent for T.C. and his siblings, and as a result, L.C. filed for emergency custody of the children. *Id.* ¶ 84. Following this placement, Defendants failed to provide the foster care subsidy and associated services to L.C., T.C., or his siblings, and failed to license L.C. as a foster parent. *Id.* ¶¶ 89-90.

The similarities across these cases demonstrate that CFSA's custom and practice of kinship diversion not only exists but is pervasive.  CFSA has unlawfully denied Plaintiffs access to the required benefits and services that Plaintiffs, and others similarly situated, are not only entitled to but in need of given the neglect and abuse the children have endured.

## ARGUMENT

## I.     STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss based on Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*

When ruling on a motion to dismiss, the court must "accept all the well-pleaded factual allegations of the complaint as true and draw all reasonable inferences from those allegations in the plaintiff's favor." *Banneker Ventures LLC v. Graham*, 798 F.3d 1119 (D.C. Cir. 2015) (citing *Ashcroft*, 556 U.S. at 678). The Court may consider facts alleged in the complaint, as well as "any documents either attached to or incorporated in the complaint and matters of which the court may take judicial notice." *Hurd v. Dist. of Columbia*, 864 F.3d 671 (D.C. Cir. 2017) (citation omitted).

## II.   DEFENDANTS' MOTION RELIES ON AN INCORRECT INTERPRETATION OF THE D.C. CHILD ABUSE AND NEGLECT ACT.

Throughout the Motion, Defendants argue that kinship diversion is "one of CFSA's options for ensuring that children are provided with necessary care and assistance" and accordingly, Defendants were not obligated to follow the legally-required removal and placement procedures. Def. Mot. at 1. However, the relevant statutory provisions and their history demonstrate this is not the case.  Under the version of the D.C. Protection of Child Abuse and Neglect Act of 1977 that was initially passed, when CFSA's precursor determined that a child was abused or neglected and in need of services, it was "authorized to provide or secure any necessary services, which may include: . . . temporary third-party placement with responsible neighbors or relatives," but only if that neighbor or relative was *not* a foster parent. *Child Abuse and Neglect Act of 1977*, § 4-1303.04(a), as repealed by D.C. Law 13-277, §  2(p), 48 DCR 2043 (Apr. 2001).

In 2001, however, the D.C. Council implemented sweeping revisions to the Child Abuse Act, including repealing the section that permitted temporary third-party placements. Child and Family Services Agency Establishment Amendment Act of 2000, Pub. L. L13-277 (Apr. 2001). As relevant here, the D.C. Council repealed § 4-1303.04(a), thereby *revoking* CFSA's authority to divert abused and neglected children who could not safely remain in their homes to "third-party placements" with relatives or neighbors outside of the foster care system. The D.C. Council left in

place elsewhere in the statute other services that had been enumerated in § 4-1303.04(a) before the repeal of that section.  In 2004, the D.C. Council made a conforming revision to § 4-1303.04(b) to remove a reference to third-party placements, further demonstrating the Council's intent to restrict CFSA from effecting third-party placements.[3]  As noted in the legislative history regarding the 2004 amendment, Judith Meltzer, the court-appointed monitor in *LaShawn A. v. Bowser*, Civil Action No. 89-1754 (TFH) ("*LaShawn*"), "urged the Committees to delete the reference to third-party placements" as such placements "which are often unlicensed relative placements … are not permitted under the [SSA]" and are not consistent with the *LaShawn* implementation plan which "requires that, Children will be placed in foster homes and other placements that meet licensing and other ...placement standards."  Committee on Human Services, Committee Report at 21-22, (Dec. 6, 2004). In accordance with Meltzer's recommendation, the reference to "third-party placements" was removed. Kinship diversion is decidedly *not* "one of CFSA's options" for providing services to abused and neglected children**,** but instead was specifically foreclosed by the D.C. Council.

Defendants cite § 4-1303.03(a)(7) for the proposition that "CFSA may also place a child with a relative in kinship diversion."  Def. Mot. at 4.[4]  Section 4-1303.03(a)(7), which was added as part of the 2001 revisions, authorizes CFSA "[t]o provide services to families and children who are eligible for such services, consistent with the requirements of this subchapter, through

---

[3] Prior to the 2004 amendment, § 4-1303.04(b) provided that when "a child has been left alone or with inadequate supervision and a *third-party placement* cannot be made,…."

[4] Defendants also cite to *In re D.S.*, 88 A.3d 678, n.19 (D.C. 2014) for this proposition.  However, there is no case captioned as *In re D.S.* at that citation.  Presumably, Defendants sought to cite to *In Re D.M.*, 84 A.3d 584 (D.C. 2014), which does contain language in footnote 19 regarding a court giving weighty consideration to a parent's chosen custodian.   However, this case does not permit kinship diversion.  It simply provides that if a child has been removed, the individual the parent chooses to be the foster parent for the child should be given such weighty consideration.

programs of services to families with children, child protective services, foster care, and adoption." However, given the context of the other 2001 revisions, it is clear that the D.C. Council could not have intended this catch-all provision to authorize CFSA to exercise powers that the D.C. Council had deliberately eliminated.

Similarly, Defendants' contention that because § 4-1303.04(c) uses the phrase "is authorized to" (rather than the term "shall"), CFSA may – but is not required to – remove an abused or neglected child who cannot remain in the home with the provision of services, is without merit.  It is clear from the legislative history and plain language of the statute that, if there are no *permissible* services available that would adequately protect the child, CFSA *must* remove the child in accordance with the three options listed in § 4-1303.04(c).  Allowing CFSA to treat the options in 4-1303.04(c)(1)-(3) as "simply examples" would upset the careful balancing of parental rights and children's interests reflected in 4-1303.04(c) and give CFSA unfettered discretion to select any other course of action, including one that had been deliberately eliminated by the D.C. Council.

In short, when CFSA has determined that a child has been abused or neglected and cannot be protected in the home through the provision of services, CFSA *is required* by law to remove the child and cannot divert the child to a third-party placement.

## III. PLAINTIFFS STATE A CLAIM UNDER THE SOCIAL SECURITY ACT

### A. The provisions of the Social Security Act under which Plaintiffs bring their claims pass the Supreme Court's test set out in *Blessing* and *Gonzaga* for whether a statute provides a private right of action.

Plaintiffs may enforce the provisions of the SSA cited in Count I of the Amended Complaint under 42 U.S.C. § 1983. Section 1983 is a vehicle for individuals to enforce "any *rights* ... secured" by federal law. *DuBerry v. Dist. of Columbia*, 824 F.3d 1046, 1051 (D.C. Cir. 2016) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002)) (emphasis added). In *Blessing*

*v. Freestone*, the Supreme Court established a three-part test for determining whether a federal law creates a right that can presumptively be enforced by private suit through § 1983: (1) "Congress must have intended that the provision in question benefit the plaintiff"; (2) "the plaintiff must demonstrate that the right assertedly protected by the statute is not so vague and amorphous that its enforcement would strain judicial competence"; and (3) "the statute must unambiguously impose a binding obligation on the States." 520 U.S. 329, 340-41 (1997) (citations omitted).   In *Gonzaga University v. Doe,* the Supreme Court clarified that the first prong of the *Blessing* test "require[s] a determination as to whether or not Congress intended to confer individual rights upon a class of beneficiaries" that include the plaintiff in the case. 536 U.S. at 285 (2002).[5]

If a statute passes the *Blessing* test, a rebuttable presumption arises that a § 1983 action enforcing the right is available. *See Blessing*, 520 U.S. at 341.  A state defendant can overcome this presumption only by showing that Congress *intended* to foreclose a remedy under § 1983, either expressly "or impliedly, by creating a comprehensive enforcement scheme that is incompatible with individual enforcement." *Id.*

Before addressing each provision of the SSA individually, Plaintiffs note two general, but important, points. First, in Count I, Plaintiffs have alleged violations of 42 U.S.C. §§ 671(a)(10), 671(a)(16), 671(a)(22), 671(a)(29); 672(a); 675(1), 675(4)(A), and 675(5).  Although the D.C. Circuit Court of Appeals has not definitively ruled on the private enforceability of these sections,

---

[5] The Eighth Circuit has held that under the first prong of the *Blessing* test, the court must evaluate: (1) "whether the provision contains 'rights-creating language'"; (2) "whether the provision had an aggregate as opposed to an individualized focus"; and (3) "whether the statute contains another enforcement mechanism through which an aggrieved individual can obtain review." *Midwest Foster Care & Adoption Ass'n v. Kincade*, 712 F.3d 1190, 1204-05 (8th Cir. 2013) (quoting *Connor B. v. Patrick*, 771 F. Supp. 2d. 142, 168 (D.Mass. 2011)).

this Court has specifically determined that many of these provisions are enforceable.[6]   *See LaShawn A. v. Dixon*, 762 F. Supp. 959, 988-89 (D.D.C. 1991), *aff'd and remanded sub nom. LaShawn A. ex rel. Moore v. Kelly*, 990 F.2d 1319 (D.C. Cir. 1993).  Specifically, in *LaShawn* the Court concluded:

> It would strain logic to hold that plaintiffs, as the intended beneficiaries of the Adoption Assistance Act, nevertheless are precluded from enforcing their rights under the Act. Moreover, the provisions of the Act itself persuade the Court that the Act creates enforceable rights. These provisions are extraordinarily specific, spelling out exactly what a state must do for children in its care in order to receive funding under the Act. Based on this, the Court holds that the Adoption Assistance Act, by its terms, creates obligations sufficiently specific and definite to be within the competence of the judiciary to enforce, ... is intended to benefit the putative plaintiffs, and is not foreclosed by express provision or other specific evidence from the statute itself.

*Id.* (quoting *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 108 (1989)).[7]

Second, while Defendants point to the U.S. Supreme Court's ruling that the requirement for a state to take reasonable efforts under 42 U.S.C. § 671(a)(15) is not privately enforceable, *Suter v. Artist M.*, 503 U.S. 347, 364 (1992), following this decision, Congress quickly enacted 42 U.S.C. § 1320a-2, limiting the Court's holding in *Suter* to § 671(a)(15) and otherwise "overrid[ing] the reasoning in [*Suter*] … to enable appropriate provisions of the [SSA] to give rise to a private enforcement." *N.Y. State Citizens' Coal. for Children v. Poole*, 922 F.3d 69, 83 n.7 (2d Cir. 2019).

---

[6] In *LaShawn A. v. Dixon*, the complaint alleged violations of, among other statutory provisions, 671(a)(10), (15), (672(e), 675(1), (5)(A), and (5)(B). *See*, 762 F. Supp. 959, 961-64 (D.D.C. 1991), *aff'd and remanded sub nom. LaShawn A. ex rel. Moore v. Kelly*, 990 F.2d 1319 (D.C. Cir. 1993). The court also specifically footnotes 672(a)(1)'s requirement to make foster care maintenance payments.

[7] Although *LaShawn* was decided pre-*Blessing*, the previous test for determining whether a plaintiff can bring a § 1983 suit articulated in *Golden State* was grounded in the same principles, and required "the plaintiff must assert the violation of a federal right," and Congress must not have specifically foreclosed the § 1983 remedy. 493 U.S. at 106.

*See* 42 U.S.C. § 1320a-2.  Here, Plaintiffs do *not* plead a claim under § 671(a)(15), and therefore the holding in *Suter* is not directly relevant.[8]

**B.     Plaintiffs have an enforceable right via § 1983 to foster care maintenance payments under § § 672(a) and 675(4)(A) of the SSA.**

Sections 672(a) and 675(4)(A) confer on foster care children and their caregivers an enforceable statutory right to foster care maintenance payments from the state.  Under the first prong of *Blessing*, it is clear that §§ 672(a) and 675(4)(A) were intended to benefit Plaintiffs.  Specifically, § 672(a) confers a specific monetary entitlement in the form of foster care maintenance payments to children who have been removed from their parents' homes and placed in foster care, and designates foster parents as authorized recipients of these payments. *See Cal. State Foster Parent Ass'n v. Wagner*, 624 F.3d 974, 980 (9th Cir. 2010) (holding that § 672 "establishes that participating states must make foster care maintenance payments on behalf of each child to a foster care provider such as individual foster parents.").  This constitutes rights-creating language as it is framed in terms of, and focused on, the individuals who benefit from its mandate, *i.e.* foster children and their caregivers.

Although some federal statutes that broadly discuss policies or programs do not contain rights creating language, Title IV-E of the SSA uses rights-creating language by focusing on the individual needs of the statute's beneficiaries.  *See Poole,* 922 F.3d. at 81. Specifically, §§ 672(a) and 675(4)(A) specify that foster care payments are necessary for "each child" to have basic

---

[8] Similarly, Defendants' citation to *Melton v. District of Columbia*, 85 F. Supp. 3d 183 (D.D.C. 2015), does not support their enforceability arguments. In *Melton*, the pro se plaintiff did not cite to a provision of the SSA and therefore failed to state a claim. *Id.* at 191. As relevant here, the Court then relied on *Suter*'s holding with respect to 42 U.S.C. § 671(a)(15) to make the much broader statement that "[a] private individual has no cause of action under the Act itself or through an action under 42 U.S.C. § 1983." *Id.*  This dicta runs counter to the plain language of § 1320a-2 and clear congressional intent, of which the *Melton* Court mysteriously did not reference.

necessities, such as food, clothing and shelter, and identify the child's foster parent as the recipient of the payments to provide for the child's care. *Poole*, 922 F.3d at 81.  The focus on the individual in § 672(a) differs from the one on the policy or program in the statutes examined in *Blessing* and *Gonzaga*. *Poole*, 922 F.3d at 81*; see also D.O. v. Glisson*, 847 F.3d 374, 378 (6th Cir.), *cert. denied*, 138 S. Ct. 316 (2017) ("Unlike [the Family Educational Rights and Privacy Act] in *Gonzaga*, the [SSA] requires individual payments and focuses on the needs of specific children, as opposed to merely speaking to the state's policy or practice.").  Rather, the language of the SSA is similar to that of the Federal Housing Act and the Medicaid Act, both of which the Supreme Court has concluded create enforceable rights.  *See Wright v. City of Roanoke Redevelopment and Housing Auth.*, 479 U.S. 418 (1987); *Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498 (1990). Moreover, unlike *Gonzaga*, the SSA only provides for institutional review of the state child welfare agency by the U.S. Department of Health and Human Services ("HHS") and does not include another enforcement mechanism through which an individual can obtain federal review.  *See* 42 U.S.C. § 671(a)(11); *Poole*, 922 F.3d at 77-78.

Turning to the second *Blessing* factor, determining whether the state has made the required foster care maintenance payments is well within a federal district judge's competency.  Section 672(a) specifies that its intended beneficiaries are entitled to foster care maintenance payments, and § 675(4)(A) specifies that these payments must cover the cost of food, clothing, shelter, daily supervision, and other necessities.  It is well within the Court's purview to determine whether Plaintiffs have received those enumerated benefits.  *See Poole*, 922 F.3d at 81 ("review[ing] how a state had determined the amounts it pays, including how it quantified the costs of the specific expenses listed in Section 675(4)…falls comfortably within what courts regularly do"); *Glisson*, 847 F.3d at 378; *Wagner*, 624 F.3d at 981.

Further, sections 672(a) and 675(4)(A) unambiguously impose a binding obligation on the state. As Defendants in fact acknowledge, the statutes repeatedly use the word "shall," making it clear that these SSA provisions prescribe mandatory requirements for the States, and DC, to follow. *Poole*, 922 F.3d at 81 (noting that the SSA also "defines, with particularity and in absolute terms, what expenses constitute those [foster care maintenance] payments"); *Glisson*, 847 F.3d at 378; *Kincade*, 712 F.3d at 1194 (noting other mandatory requirement language in §1320a). Defendants argue that 672(a) is a "roadmap," not marching orders, but once a state submits a plan to participate in the program, as DC has, these payments are mandatory. *See* Am. Compl. ¶¶ 24, 34.   In the words of the Sixth Circuit, "[i]t isn't optional." *Glisson*, 847 F.3d at 379. "When Congress names the state as the subject, writes in the active voice, and uses mandatory language, it leaves no doubt about the actor's identity or what the law requires." *Id.*

Therefore, sections 672(a) and 675(4)(A) satisfy all three prongs of the *Blessing* test, and confer a private right of action enforceable under § 1983. This conclusion is consistent with the holdings of the majority of circuit courts that have considered the issue.[9] *See Poole*, 922 F.3d 69; *Glisson*, 847 F.3d at 374 (6th Cir.); *Wagner*, 624 F.3d at 979-980 (9th Cir. 2010).

Defendants repeatedly cite to outlier decisions, such as *Kincade*, and dissents to support their arguments regarding §§ 672(a) and 675(4)(A).   But even the court in *Kincade* – the lone circuit court decision to find no private right of action under these SSA provisions – analyzed only the first *Blessing* factor. Defendants cannot escape the prevailing view that the statute's intended beneficiaries can bring suit to enforce their rights under these sections.

---

[9] The majority of district courts that have considered the issue also so held. *See, e.g., Connor B.*, 771 F. Supp. 2d at 142; *Lamaster v. Ind. Dep't of Child Servs.* No. 4:18-cv-00029-RLY-DML, 2019 U.S. Dist. LEXIS 45747 (S.D. Ind. Mar. 20, 2019).

As noted in *Poole*, the fact that § 672(a) and § 675(4)(A) also concern state requirements does not diminish the ultimate focus on the beneficiaries of the plans.[10] The entitlement is "specific and definite" and "focus[ed] on the individual" more than the aggregate. *Poole*, 922 F.3d at 82. Additionally, "substantial compliance review, coupled with funding cutoffs," does not supplant a private right of action under § 1983 as Defendants urge. *Id.* (stating that "(limited) federal agency review for a state's substantial compliance is insufficient to supplant enforcement through Section 1983"). The Supreme Court explicitly rejected this notion in *Blessing*, and further confirmed this position in *Wilder* by identifying an enforceable right to "reasonable and adequate" reimbursement rates, even though the Medicaid statute contained a substantial compliance requirement. *Poole*, 922 F.3d at 84 (first citing *Blessing*, 520 U.S. at 348; and then citing *Wilder*, 496 U.S. at 519). Defendants also cite an Eleventh Circuit decision, *31 Foster Children v. Bush*, 329 F.2d 1255 (11th Cir. 2003) to argue that a definitional section cannot confer enforceable rights. *See* Mot. at 15 & 16 n.15. Even if that decision were binding on this Court, the Eleventh Circuit only said definitional provisions "*alone* cannot" be the basis of rights enforceable under § 1983. 329 F.2d at 1271 (emphasis added). Here, the definitional section is not, by itself, the basis for Plaintiffs' enforceable right. The relevant right – the right to foster care maintenance payments – is conferred by § 672(a); the definitional section, 675(4)(A), simply specifies what those payments are meant to cover.

Defendants note that Spending Clause legislation does not often create an individually enforceable right, but ignore the fact that the "Supreme Court has repeatedly recognized that a federal statute can create an enforceable right under § 1983 when it explicitly confers a specific

---

[10] Defendants' citation of minority views and consignment of the prevailing view to a misleadingly incomplete footnote, similarly does not diminish the enforceability under § 1983. *See* Mot. at 18 & n.16.

- 13 -

monetary entitlement on an identified beneficiary." *Wagner,* at 977 (citing *Wilder.* 479 U.S. at 498, *Wright,* 479 U.S. at 428). Here, the SSA establishes an "enforceable right under § 1983 to foster care maintenance payments from the State that cover the cost of the expenses enumerated in § 675(4)(A)."[11] *Id.* at 981. Moreover, by amending the SSA in response to the *Suter* decision, it is clear that Congress intended to "enable appropriate provisions of the Social Security Act to give rise to a private enforcement action." *Poole*, 922 F.3d at 83 n.7.

Taking a page from the *Poole* dissent, Defendants also argue that the Supreme Court's decision in *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015), supports its position that Sections 672(a) and 675(4)(A) do not create a private right of enforcement. However, as noted in the *Poole* majority, *Armstrong* "did not consider whether the plaintiffs would have had a private cause of action under § 1983" but rather, "addressed the question of whether the plaintiffs had a cause of action in equity." *Poole*, 922 F.3d at 85. Moreover, *Armstrong* is distinguishable because the section of the Medicaid Act at issue in that case was "judicially unadministrable in nature" whereas the provisions of the SSA are judicially administrable. *Id.* Accordingly, finding a § 1983 right of action in the context of §§ 672(a) and 675(4)(A) is not inconsistent with *Armstrong*.

Finally, Defendants allude to HHS enforcement, possibly as an attempt to rebut the presumption of private enforcement created when a statute passes the *Blessing* test. *See* Def. Mot. 17-19. But the remedial mechanisms that § 671 (not § 672) provides are neither comprehensive nor effective for individuals like Plaintiffs, who have not received benefits, because those provisions do not provide for judicial review of individual grievances. "[T]he Supreme Court has generally found a remedial scheme sufficiently comprehensive to supplant Section 1983 only

---

[11] Although the Supreme Court had the opportunity to grant certiorari in *Glisson* and clarify the law, the writ of certiorari was denied.

where it 'culminate[s] in a right to judicial review' in federal court." *Poole* 922 F.3d at 84 (quoting *Wilder*, 496 U.S. at 521). "The [SSA] provides no federal court review of an individual's claim, other than what, under *Blessing*, is presumptively available under Section 1983." *Id.* The explicit mechanisms in the statute are not effective because the necessary individual enforcement is missing, and absent § 1983, "foster families possess no federal mechanism to ensure compliance with the Act." *Glisson*, 847 F.3d at 380. Defendants therefore fail to rebut the presumption.

This Court should follow the substantial majority of federal circuits and district courts that have considered the issue and find that Congress unambiguously conferred a private right of action under § 1983 with respect to 42 U.S.C. §§ 672(a) and 675(4)(A).

> 1.    *Plaintiffs have stated a claim that they are entitled to foster care maintenance payments*.

As the Supreme Court stated in *Miller v. Youakim*, 440 U.S. 125, the right to receive foster care maintenance payments under Title IV-E of the SSA "arises from the status of the child as a subject of prior neglect."  Plaintiff Children have been the subject of prior neglect and abuse and, consistent with the Court's decision in *Miller,* Plaintiff Children fall within the class of intended beneficiaries under the SSA and have a right to receive foster care maintenance payments.

Plaintiffs have adequately pleaded their entitlement to foster care maintenance payments under § 672(a) in the Amended Complaint because Defendants were responsible for the placement and care of the Plaintiff Children, as required by § 672(a)(2)(B).  Specifically, after Defendants had determined that Plaintiff Children had been neglected and abused and that immediate removal from their parent's care was necessary, Defendants identified Plaintiff Caregivers as willing caretakers and either instructed them to take custody of Plaintiff Children or brought the Plaintiff Children to live with them. *Id.* ¶¶ 48, 66, 84.  Plaintiff Caregiver's filing for custody of Plaintiff Children in the D.C. Family Court does not negate CFSA's responsibility for the placement, as

Plaintiff Caregivers' only initiated these filings in response to CFSA's actions. *Id.* Because the Plaintiff Children would not have been removed from their parents' homes and placed with Plaintiff Caregivers but for Defendants' actions, it is clear that Defendants were responsible for the removal and placement of the Plaintiff Children.

Additionally, as pleaded in the Amended Complaint, Plaintiff Children were eligible for benefits under the federal Temporary Assistance for Needy Families program prior to being removed from their parents' homes, and accordingly are eligible for foster care maintenance payments pursuant to § 672(a)(3). *Id.* ¶¶ 55, 75, 90.

Defendants' intentional violations of law do not subvert Plaintiffs rights to foster care maintenance payments. As noted above, Defendants' intentionally circumvented the legally-required removal procedures and, accordingly, there was no "judicial determination to the effect that continuation in the home from which removed would be contrary to the welfare of the child and that reasonable efforts [to prevent removal and facilitate reunification] have been made." § 672(a)(2)(A)(ii).  Further, Defendants' deliberately and willfully failed to fulfill their statutory duty to license Plaintiff Caregivers as foster parents, and accordingly, Plaintiff Children were not placed in a foster family home licensed by the state, as required under § 672(a)(2)(C).  Defendants cannot intentionally ignore the actions they are obligated by law to take and then later claim that Plaintiffs are not entitled to foster care maintenance payments because of Defendants' failure to fulfill these obligations.  Defendants are the ones that deliberately prevented Plaintiffs from getting licensed as foster parents, and now claim that Plaintiffs are therefore not entitled to foster care maintenance payments.  The Court should not condone this end-run around a statute that is intended to benefit people like Plaintiffs.

Because Plaintiffs would have been eligible for foster care maintenance payments but for Defendants' willful violations of law, Plaintiffs have adequately pleaded that they have met the statutory criteria and are entitled to these payments. Accordingly, the Court should deny the Motion to Dismiss this part of Count I.

2.   ***Defendants should be equitably estopped from arguing that the SSA does not apply to children in Plaintiffs' circumstances.***

Because Defendants' deliberately and willfully failed to remove and place Plaintiff Children in accordance with legally-required procedures and to license Plaintiff Caregivers as foster parents, Defendants should be equitably estopped from arguing that Plaintiffs are not eligible for foster care maintenance payments due to non-compliance with § 672's removal and placement requirements. "The doctrine of equitable estoppel is not, in itself, either a claim or a defense. Rather, it is a means of precluding a litigant from asserting an otherwise available claim or defense against a party who has detrimentally relied on that litigant's conduct." *Rogers v. Exec. Office for US Attorneys*, No. CV 18-454 (RBW), 2019 WL 1538252, at *1 (D.D.C. Apr. 9, 2019) (quoting *ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C. Cir. 1988)).   To apply equitable estoppel to the government, a party must show that (1) "there was a definite representation to the party claiming estoppel," (2) the party "relied on its adversary's conduct in such a manner as to change his position for the worse," (3) the party's "reliance was reasonable" and (4) the government "engaged in affirmative misconduct." *Morris Commc'ns, Inc. v. FCC*, 566 F.3d 184, 191 (D.C. Cir. 2009) (quoting *Graham v. SEC*, 222 F.3d 994, 1107 (D.C. Cir. 2000)). "Estoppel generally requires that government agents engage—by commission or omission—in conduct that can be characterized as misrepresentation or concealment, or, at least, behave in ways that have or will cause an egregiously unfair result." *GAO v. Gen. Accounting Office Pers. Appeals Bd.*, 698 F.2d 516, 526 (D.C. Cir. 1983).

In *Ramallo v. Reno*, this Court held the U.S. was estopped from deporting a woman who testified against South American drug gangs through an agreement with prosecutors. 931 F. Supp. 884, (D.D.C. 1996). The Court concluded the woman's reliance on the government's promise was reasonable, given the shared understanding of the danger involved, and the estoppel was in the public interest to ensure constitutional rights are upheld. "Estoppel is necessary to overcome the grave injustice that would befall Ramallo if she is deported." *Id.* at 895. Courts have also found equitable estoppel against the government to prevent other grave injustices. *See, e.g.*, *Estate of Amaro v. City of Oakland*, 653 F.3d 808, 813–15 (9th Cir. 2011) (finding equitable estoppel applied "where a plaintiff believes she has a 42 U.S.C. § 1983 claim but is dissuaded from bringing the claim by affirmative misrepresentations and stonewalling by the police,"); *Furcron v. United States*, 626 F. Supp. 320 (D. Md. 1986) (finding taxpayers, who allegedly had timely tendered cashier's check in satisfaction of their tax liability and were subsequently required by the IRS to pay that amount again, alleged facts indicating estoppel sufficient to survive a motion to dismiss).

Here, Defendants' failure to remove Plaintiff Children from their home and license Plaintiff Caregivers as foster parents meet the requirements for equitable estoppel because Defendants made definitive representations that Plaintiff Caregivers needed to take custody of the children. Specifically, CFSA explicitly requested that K.H. and M.M. take physical custody of K.J. and L.E., instructed K.H. and M.M. to file for emergency custody of K.J. and L.E. to prevent the children from being subjected to further abuse or neglect, intentionally misrepresented that failure to file for custody would result in the children being placed in a foster home with a non-relative caregiver, and intentionally failed to inform K.H. and M.M. of their option to become foster parents for K.J. and L.E. Am. Compl. ¶¶ 48, 66.  With respect to T.C. and his siblings, after CFSA determined the children could no longer remain in their mother's care, CFSA physically removed the children

- 18 -

from their mother's care and brought them to live with L.C. By doing so, CFSA represented to L.C. that she needed to take physical custody of T.C. and his siblings in order to prevent the children from being subjected to further abuse or neglect. Further, CFSA intentionally failed to inform T.C. of her option to become a foster parent for T.C. and his siblings, in order to avoid its obligations to provide foster care maintenance and support for the children.

Similar to *Ramallo* and *Estate of Amaro*, Defendants' misrepresentations constitute affirmative misconduct, and in each case, the Plaintiff Caregivers reasonably relied on these misrepresentations and assumed custody of the children to their detriment, missing out on important resources and services to which they were entitled.  Further, Defendants willfully and deliberately failed to fulfill their statutory duty to petition the court for a judicial determination of neglect and license Plaintiff Caregivers as foster parents precisely to avoid providing these resources and services to Plaintiffs.

Finally, as pleaded in the Amended Complaint, CFSA's actions led to an egregiously unfair result for Plaintiffs. *See* Am. Compl. ¶¶ 58, 77, 93. Accordingly, CFSA should be equitably estopped from arguing that Plaintiffs have not met all of the requirements for foster care maintenance payments under the SSA.

### C.    Plaintiff Children have an enforceable right via § 1983 to receive a case plan that is reviewed under the state's case review system pursuant to §§ 671(a)(16), 675(1), 675(5) of the SSA.

Sections 671(a)(16), 675(1), and 675(5) of the SSA confer an enforceable statutory right to their intended beneficiaries to receive a written case plan that ensures the safety and well-being of a child in an out-of-home placement and to have such case plan be periodically reviewed under the state's case review system.

Under the first prong of *Blessing,* it is clear that §§ 671(a)(16), 675(1), and 675(5) were intended to confer a benefit on Plaintiff Children.  Similar to the right to foster care maintenance payments explained in Part III.B above, §§ 671(a)(16) and 675(1) focus on the individual needs of the statute's beneficiaries by requiring a State, such as DC, to develop a case plan to ensure the continued safety and well-being of "each child receiving foster care maintenance payments," which includes an assessment of the safety and appropriateness of the placement, and describes the services the child and foster parent will receive to "address the needs of the child while in foster care." *Id.*  Section 675(5) also focuses on the beneficiaries' individual needs by requiring a State, such as DC, to establish a case review system that assures "each child has a case plan designed to achieve placement in a safe setting that is … consistent with the best interest and special needs of the child." By focusing on the individual needs of each child, §§ 671(a)(16), 675(1), and 675(5) establish rights creating language and satisfy the first prong of *Blessing.*

Further, Plaintiff Children's right to a case plan meets the second prong of *Blessing* because the right is not so "vague and amorphous that its enforcement would strain judicial competence." *Blessing*, 520 U.S. at 340-41 (citation omitted). Sections 671(a)(16) and 675(1) establish specific requirements for each case plan which must include, *inter alia,* a discussion of the safety and appropriateness of the placement, a plan for "assuring the child receives safe and proper care," and copies of the child's health and education records. *Id.* Further, § 675(5) sets forth specific requirements for reviewing the plan under the case review system, requiring that the status of each child be reviewed "no less frequently than once every six months." Because §§ 671(a)(16), 675(1), and 675(5) set forth detailed requirements for a case plan and case review system, it is within the Court's competency to determine whether Plaintiffs have received these services.

Defendants do not contest the clarity of the case plan requirements, effectively conceding that they are not vague nor amorphous, and merely state, in a footnote, that "[t]o the extent plaintiffs' claim for damages, Compl. at 41, is based on their claim under § 671(a)(16), the written case plan requirement does not confer rights that can be the subject of an action for damages under § 1983." [12] Def. Mot. at 22 (citing *Estate of Place v. Anderson*, 398 F. Supp. 3d 816, 844 (D. Colo. 2019)).

Although Defendants argue that "[t]he statute imposes an obligation on the state to receive an approval from HHS and does not confer a benefit on individuals," Defendants' support for this proposition relies on a Minnesota district court case, which is not binding on this court. Def. Mot. at 21 (citing *T.F. by Kenner v Hennepin Cty.,* 2018 WL 940621, *1, *6 (D. Minn. Feb. 16, 2018)). However, a number of Circuit Courts have held that § 671(a)(16) confers rights that are privately enforceable under § 1983.  *See Henry A. v. Willden*, 678 F.3d 991, 1006-1007 (9th Cir. 2012) (stating that "Section 671(a)(16) unambiguously requires the State to provide for the development of a case plan for each child" and holding that "the case plan provisions are enforceable through § 1983."); *Marisol A. v. Giuliani*, 929 F. Supp. 662, 683 (S.D.N.Y. 1996) *aff'd*  126 F.3d 372 (2d Cir. 1997) (stating that "both §§ 671(a)(1) and (a)(16) are clear and are not beyond the power of the Court to enforce");  *Lynch v. Dukakis*, 719 F.2d 504 (1st Cir. 1983) (allowing plaintiffs to proceed with a private cause of action for injunctive relief for violations of the case plan provision

---

[12] Defendants' citation to *Connor B. ex. rel. Vigurs v. Patrick*, 774 F.3d 45 (1st Cir. 2014), is a distraction. Def. Mot. at 22-23. First, there was no challenge to the enforceability of the case-plan requirement in that case because *Lynch* had already decided the issue. 774 F.3d at 61. Second, in *Connor B.*, the First Circuit affirmed that, because the government defendants had substantially complied with the case-plan requirement, there was, as to the plaintiff *class*, no violation of that requirement. *Id.* at 61-62. Defendants then argue that because Plaintiffs are *not* part of a class, there can be no liability here either, an illogical conclusion. While it is true that Plaintiffs have not brought a class action, that only distinguishes *Connor B.* and presents no barrier to finding Defendants liable for failing to develop and implement case plans for Plaintiffs.

in § 671(a)(16) and the status review provision in § 675(5)(B)).  Given the clear, rights-creating

language of §§ 671(a)(16), 675(1), and 675(5), and consistent with prior Circuit Court decisions,

this Court should find that Plaintiff Children have a privately enforceable right to receive a case

plan that is reviewed under the state's case review system.

> **D.      Plaintiff Caregivers have an enforceable right via § 1983 to receive notice of their options to participate in the care and placement of Plaintiff Children under 42 U.S.C. § 671(a)(29) of the SSA.**

When children are removed from their homes, Section 671(a)(29) confers an enforceable

statutory right to adult relatives, such as Plaintiff Caregivers, to receive an explanation of the

options the relative has to participate in the care and placement of the child.  This section features

language clearly targeting a class of intended beneficiaries that is specific and mandatory, meeting

the threshold for a privately enforceable right under the *Blessing* test.

Section 671(a)(29) meets the first prong of *Blessing*, as the provision is intended to benefit

both children who have been removed from their home due to abuse or neglect and the adult

relatives of these children.  The statute creates for that class of relatives a right to receive notice of

the child's removal and an explanation of their options to participate in the child's placement and

care. Because the statute focuses on the needs of its intended beneficiaries, it creates private rights,

and a private right of action, for those beneficiaries.[13] *Gonzaga*, 536 U.S. 273; *Garnett v. Zeilinger*,

323 F. Supp. 3d 58 (D.D.C. 2018).

The relative caregiver's right to receive notice of a child's removal, is analogous to the

case in *Salazar*, in which the Court found that a Medicaid provision requiring the State to "inform

all persons under the age of 21 who are Medicaid-eligible of the services … to which they are

---

[13] This applied regardless of whether the statute is designed to condition the receipt of federal funds upon a state agency's compliance with it. *Wilder*, 496 U.S. at 498; *Salazar v. Dist. of Columbia*, 729 F. Supp. 2d 257 (D.D.C. 2010).

entitled" was "focused on the individuals protected" and accordingly was enforceable under §
1983. *Salazar*, 729 F. Supp. 2d at 269. The court emphasized that although the provision was part
of a regulatory scheme outlining "plan requirements," that broader scheme did not affect the rights-
conferring language of that specific provision. *Id*. at 270. Similarly, Section 671(a)(29) is part of
a broader scheme outlining what a State must do in order "to be eligible for payments" under the
SSA. However, the rights-creating language directed toward the intended beneficiaries of the
statute – children removed from the custody of their parents and their relative caretakers – still
creates a substantive individual right for purposes of a § 1983 action.

Further, under the second prong of *Blessing*, the rights § 671(a)(29) grants to children and
their caretakers are specific, delineated in the statute's text, and enforceable by the courts. They
are not "so 'vague and amorphous' that [their] enforcement would strain judicial competence."
*Blessing*, 520 U.S. at 340-41. When a statute sets forth in objective terms what actions a state must
take, even when the state retains some compliance discretion, it is judicially enforceable for
purposes of construing a private right. *DuBerry*, 824 F.3d at 1053.

Section § 671(a)(29) outlines, with specificity, how to provide proper notice to relatives
of a child removed from their parent's custody. As the statute in question in *DuBerry* did,
§ 671(a)(29) allows for an easy determination of whether or not a State has fulfilled its obligation.
D.C. should have informed the relative of the child's removal, explained what options the relative
has under federal, state, and local law, and described the requirements to become a foster family
home – all determinable in relevant statutes. The plain language of § 671(a)(29) unambiguously
binds the state to provide the specified notice as evidenced by the fact that the statute speaks in
terms that are clearly mandatory, rather than precatory. *Blessing*, 520 U.S. at 340-41. As the statute
in question in *Blessing* did, the statute here conditions the state's receipt of federal funds on its

compliance with the statute and uses mandatory language to describe the obligation–the state "*shall*" give notice and explanation to the relevant family members.

Because the statute specifically obligates a state, such as D.C., to notify relatives of a child who has been removed of their options "to participate in the care and placement of the child," Plaintiff Caregivers are the intended beneficiaries of § 671(a)(29). As contemplated by this section, Plaintiff Children were removed from the custody of their parents, and as a result, the children's relatives, including Plaintiff Caregivers, were entitled to receive notice of their options to participate in Plaintiff Children's care. Any notice CFSA would have provided under this section would have been to the great benefit of these Plaintiffs, as Plaintiff Caregivers would have been informed of the option to have CFSA formally remove and place Plaintiff Children in the Plaintiff Caregiver's care, so that Plaintiffs could receive continued benefits and services. Accordingly, the private right conferred by § 671(a)(29) is Plaintiffs' to enforce.

While no court has extensively considered whether or not the notification provision of § 671(a)(29) creates a private right of action, in *Murphy v. Baker*, No. 15-30187-MGM, 2017 WL 2350246, at *9 (D. Mass. May 4, 2017), the Court in dicta acknowledged that it "might be possible to read the text of § 671(a)(29) as conferring an enforceable private right to kinship notification on a child removed from the care and custody of his or her parent." However, because neither the child nor the child's relatives were party to the case, the Court did not have to decide the issue.

Defendants argue that § 671(a) is part of a "comprehensive enforcement scheme" that is incompatible with private enforcement. However, as discussed above, it is settled law that the fact that a statute is part of an administrative scheme allowing for the revocation of federal funds does not preclude its private enforcement via a § 1983 action.  *Wilder*, 496 U.S. at 498; *Wright*, 479 U.S. 418. In both *Wilder* and *Wright*, the Court rejected arguments that because the statutes

plaintiffs sought to enforce were part of an administrative scheme, the scheme's remedy – the loss of federal funding for the state entity – precluded a private remedy via § 1983. Noting that the statutes' administrative structures did not provide any judicial remedies, which had previously been held to preclude § 1983 recovery, the Court found that neither statutory scheme was "sufficiently comprehensive and effective to raise a clear inference that Congress intended to foreclose a § 1983 cause of action." *Wright*, 479 U.S. at 424-45. Nothing in the SSA explicitly or implicitly forecloses a private right of action under § 1983.  Accordingly, this Court should find that Plaintiff Caregivers have a privately enforceable right to receive notice of the option to participate in the placement and care of Plaintiff Children.

      **E.**    **Plaintiff Children have an enforceable right via § 1983 to receive services to protect the child's safety and health under § 671(a)(22) of the SSA.**

Section 671(a)(22) confers on its intended beneficiaries an enforceable statutory right to receive services from the state to protect the child's safety and health. The language of § 671(a)(22) meets the threshold set forth in *Blessing*, clearly conferring a privately enforceable right.

First, Section 671(a)(22) contains rights-creating language that focuses on the individuals it intends to benefit, "rather than having a system-wide or aggregate focus." *Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277, 292 (N.D. Ga. 2003). Specifically, § 671(a)(22) provides that a state, such as D.C., shall "ensure that children in foster care placements … are provided quality services that protect the safety and health of the children." This language is clearly focused on and intended to benefit foster care children and satisfies the first prong of *Blessing*.

Further, the prescription of the section is specific and delineated – its beneficiaries must receive services sufficient to ensure their safety and health. Its mandate is "not too vague and amorphous to be enforced by the judiciary," nor is it less than clearly mandatory. *Id*. While the standard for "quality services" may be flexible, the statute establishes a threshold: at a minimum,

states must provide children in foster care placement "services to protect the safety and health of the children." The state cannot refuse to provide services to children in such circumstances, as Defendants have done here.  Finally, the SSA as a whole does not contain a separate enforcement mechanism through which an aggrieved party could seek recourse. *Id*.  Accordingly, § 671(a)(22) satisfied all three prongs of the *Blessing* test.

Because Plaintiff Children have been removed by CFSA and placed by the agency in the care of Plaintiff Caregivers, they are the intended beneficiaries of § 671(a)(22). They are entitled to the "quality services" mandated by this section, and the private right it creates is theirs to enforce.

While some courts have found that the language of § 671(a)(22) is "vague," and declined to find a privately enforceable right in its strictures, *see Clark K. v. Guinn*, No. 2:06-CV-1068-RCJ-RJJ, 2007 WL 1435428, at *10 (D. Nev. May 14, 2007), others, looking at the plain language of the statute's text, have held that this section is designed to benefit a clearly identifiable class of plaintiffs – foster children – and that its mandate is quite clear. *Kenny A*, 218 F.R.D. at 292. In *Kenny A*, the Court not only found that § 671(a)(22) created a privately enforceable right, but that plaintiffs' claims were strengthened by virtue of the fact that they relied on "additional statutory provisions which … contain the requisite rights-creating language," as Plaintiffs have done here. *Id*.

Defendants argue that § 671(a)(22) only requires "generalized actions," and thus does not meet the threshold for "specific types of mandatory actions" that *Gonzaga* requires. Mot. at 14. However, as the Court in *Kenny A* found, it is hardly ambiguous that the statute entitles foster children to services to keep them safe and healthy. To read the statute otherwise would render it impossible for children affected by CFSA's actions to seek remedy, a result incompatible with the

purpose of the SSA. Accordingly, the Court should find that Plaintiff Children have a privately enforceable right to receive services for their health and safety under § 671(a)(22).

**F.      Plaintiff Children have an enforceable right via § 1983 to be placed in a foster care home that meets standards for safety, sanitation, and non-discrimination under § 671(a)(10) of the SSA.**

Section 671(a)(10) confers an enforceable statutory right to foster care children, such as Plaintiff Children, to be placed in a foster care home that meets the standards set forth therein. Section 671(a)(10) is enforceable via § 1983 as it clearly targets a class of intended beneficiaries and is specific and mandatory, passing the *Blessing* test for a privately enforceable right. This Court suggested as much in *LaShawn* and should similarly hold here.

With respect to the first prong of *Blessing*, § 671(a)(10) clearly intends to benefit foster children by mandating that the homes in which they are placed meets certain minimum standards. The main case Defendants cites concedes as much. *See Yvonne L. ex rel. Lewis v. New Mexico Dep't of Human Servs.*, 959 F.2d 883, 887 (10th Cir. 1992) ("Defendants properly do not dispute that children in state foster care, including plaintiffs, are intended beneficiaries of the [SSA].")[14] Like other provisions of § 671 and § 672, § 671(a)(10) necessarily contains aggregate aspects, but its predominant focus is the individual, as evidenced by the standards in question "shall be applied … to *any foster family home*," 671(a)(10)(B); "ensure appropriate liability for caregivers when a child participates in an approved activity," 671(a)(10)(C); and be waived "*only on a case-by-case basis* for non-safety standards … in relative foster family homes for *specific children* in care." 671(a)(10)(D) (emphases added). Finally, § 671(a)(10) does not contain any other enforcement mechanism through which an aggrieved individual can obtain review.

---

[14] Defendants repeated citations to *Estate of Place v. Anderson*, 398 F. Supp. 3d 816 (Col. 2019), land harmlessly, as that case simply applies *Yvonne*, which itself is out-of-circuit.

Additionally, Section 671(a)(10) satisfies the third prong of *Blessing* as it unambiguously imposes a binding obligation on Defendants like the other sections of § 671(a) discussed above and for the same reasons. Several courts have found § 671(a)(10) satisfies this condition, including *Yvonne*. 959 F.2d at 888 ("The [SSA] indicates an intent to bind the state, because it sets out a quid pro quo: foster care payments in exchange for specified planning and operation standards.")

The second prong of the *Blessing* test – whether the provision is too vague and amorphous to be enforced by a judge – is the only point of contention. As noted above, this Court already decided this issue: the *LaShawn* Complaint alleged a violation of § 671(a)(10), and this Court found it, and other provisions, were enforceable. 762 F. Supp. at 989. The Southern District of New York reached the same conclusion and was affirmed by the Second Circuit. *See Marisol A.*, 929 F. Supp. at 683. The *Marisol A.* Court held § 671(a)(10) is "clear" and "not beyond the power of the Court to enforce." Other district courts have followed suit. *See Brian A. v. Sundquist,* 149 F. Supp. 2d 941 (M.D.Tenn. 2000). The *Sundquist* Court, which cited both *Marisol A.* and *LaShawn*, also applied logic of *Wilder* and distinguished (a)(10) from (a)(15): "In contrast to the *Suter* language simply requiring the state to make "reasonable efforts" with no elaboration on what that entailed, this section requires that the state establish standards "reasonably in accord with recommended standards of national organizations concerned with the standard for such institutions or homes." *Id.* at 949.

Although the Fourth Circuit concluded that § 671(a)(10) is too vague or amorphous to be judicially enforceable, this decision was published nine days after *Blessing* and did not cite to the case. *See White v. Chambliss,* 112 F.3d 731, 739 (4th Cir. 1997). Additionally, *White* misreads 42 U.S.C. § 1320a-2 as having no effect on non-(a)(15) provisions of § 671. 112 F.3d 739 n.4. More importantly, Congress amended § 671(a)(10) after *Yvonne* and *White*. When those courts

considered § 671(a)(10), that section of the statute consisted only of the current § 671(a)(10)(A). But in 2014, Congress added § 671(a)(10)(B)-(D), providing considerably more guidance. *See* Preventing Sex Trafficking and Strengthening Family Act, Pub. L. No. 113-183, 128 Stat 1919 (Sept. 29, 2014). Section 671(a)(10)(B) specifies to whom the standards should be applied and what they must contain; § 671(a)(10)(C) specifies further content of the standards with respect to liability; and § 671(a)(10)(D) provides for when the standards can be waived. Given this added content in the statute, the *Yvonne* and *White* decisions should carry little, if any, weight.

Further, Plaintiffs have adequately pleaded that Defendants failed to ensure Plaintiff Children were placed in a home that met the applicable standards for foster family homes, despite the fact that Plaintiff Children were entitled to such placement.[15] Am. Compl. ¶¶ 23(b), 38, 96(b). Because Plaintiff Children were removed from the care of their parents by CFSA, the Plaintiff Children were entitled to be placed in a licensed foster family home.  Once Defendants identified Plaintiff Caregivers as willing caretakers, however, Defendants bypassed the foster system, immediately placing Plaintiff Children with these relatives.  As a result, the Plaintiff Children were placed in homes that had not been investigated or approved for foster care placements. *See* Am. Compl. ¶¶ 48-58; 66-77; 84-93.  Plaintiff Children, as the intended beneficiaries of § 671(a)(10), are entitled to enforce their right to be placed in a licensed foster family home.  As a result, the Court should find that Plaintiff Children have a privately enforceable right to be placed in a foster family home that meets applicable standards under § 671(a)(10).

---

[15] As a factual matter, Plaintiff Caregivers' homes met all applicable licensing requirements or would have been eligible for non-safety related waivers.

## IV. PLAINTIFFS ADEQUATELY ALLEGE DEFENDANTS' ILLEGAL PRACTICE OF KINSHIP DIVERSION VIOLATES THE EQUAL PROTECTION CLAUSE

The Fifth Amendment's guarantee of equal protection "requires state actors to treat similarly situated persons alike." *Grissom v. Dist. of Columbia*, 853 F. Supp. 2d 118, 126 (D.D.C. 2012). A "class of one" equal protection claim may be maintained "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (citation omitted); *see also 3883 Connecticut LLC v. Dist. of Columbia*, 336 F.3d 1068, 1075 (D.C. Cir. 2003) (citation omitted) (holding that there are "two essential elements of [a] 'class of one' equal protection claim: (1) disparate treatment of similarly situated parties (2) on no rational basis."). Defendants acted with discriminatory intent by intentionally and irrationally denying Plaintiffs and other similarly situated children and relative caregivers the same services and benefits provided to children and caregivers who are not related to each other, thus violating the Equal Protection Clause.

In *Miller v. Youakim*, the Supreme Court held that foster parents who were related to the foster children in their care were entitled to foster care benefits on the same basis as unrelated foster care providers. 440 U.S. at 133. In particular, the Court stated "[t]he legislative materials at no point suggest that Congress intended to subject some foster homes, but not others, to minimum standards of quality, as could result if § 408 excluded relatives' homes from the definition of 'foster family home.'" *Id.* at 140. Rather,

> Congress attached considerable significance to the unique needs and special problems of abused children who are removed from their homes by court order, distinguishing them as a class from other dependent children…[as] 'These are the most underprivileged children and often have special problems' [and] 'Section 408 embodies Congress' recognition of the peculiar status of neglected children in requiring that States continually supervise the care of these children, § 408 (a)(2), develop a plan tailored to the needs of

> each foster child 'to assure that he receives proper care,' § 408 (f)(1),
> and periodically review both the necessity of retaining the child in
> foster care and the appropriateness of the care being provided.

*Id.* at 141 (internal citations omitted).  The Court stated, "We think it clear that Congress designed the [SSA] program to include foster children placed with relatives," as the "overriding purpose … was to assure that these children, who have in many cases been severely mistreated, receive the appropriate and adequate care that was not provided in their homes."  *Id*. at 145. Furthermore, the Court noted that the need for resources, both monetary and service, "to provide a proper remedial environment for such foster children *arises from the status of the child as a subject of prior neglect, not from the status of the foster parent.*" *Id.* at 145 (emphasis added).  Plaintiffs have pleaded facts sufficient to show that Defendants acted with discriminatory intent by intentionally denying Plaintiffs and other similarly situated children and relative caregivers the same services and benefits provided to non-relative children and caregivers with no rational basis for doing so. As alleged in the Amended Complaint, once Defendants identified Plaintiff Caregivers as willing caretakers, Defendants misled them into believing they needed to take physical custody and/or file for legal custody in court in order to protect Plaintiff Children from being subjected to further neglect or abuse or from being placed with a stranger. Am. Compl. ¶¶ 48, 66, 84.  To deny these abused and neglected children and relative caregivers the necessary and essential resources required by law on the basis that the caregivers are blood relatives, as opposed to strangers, is not a rational basis.  Defendants deliberately failed to follow the required removal and placement procedures that are afforded to other abused or neglected children merely because Plaintiff Caregivers are related to Plaintiff Children. In doing so, Defendants denied Plaintiffs the benefits and services they are entitled to under the SSA and D.C. law.  Further, Defendants treated Plaintiff

Caregivers differently *solely* because of their relationship to Plaintiff Children – Defendants refused to even consider Plaintiff Caregivers for licensure as foster parents.

Plaintiffs have alleged facts sufficient to show that they were treated differently from similarly situated non-relative foster parents and children. Plaintiffs have alleged that CFSA deviated from the legally-required removal and placement procedures for abused and neglected children, including by failing to, *inter alia*: file a neglect petition in court with respect to Plaintiff Children, license Plaintiff Caregivers as foster parents, pay them the foster care subsidy, or provide Plaintiffs with associated services. Plaintiffs do not, as Defendants claim, merely "allege facts regarding their own interactions with CFSA," Mot. at 12, but rather show a pattern and practice of intentional discrimination based solely on the Plaintiffs' familial relationship. Defendants have failed to offer any explanation for this disparity in treatment, and there is no rational or just basis to justify Defendants' deprivation. As a result, Plaintiffs have adequately stated a claim that Defendants' conduct violates Plaintiffs' rights to Equal Protection.

## V.   PLAINTIFFS ADEQUATELY ALLEGE DEFENDANTS' ILLEGAL PRACTICE OF KINSHIP DIVERSION VIOLATES PLAINTIFFS' DUE PROCESS RIGHTS

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire and more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Section 672(a) of the Social Security Act requires the state to make foster care maintenance payments on "behalf of each child" in foster care. 42 U.S.C. § 672(a). As discussed above in Part III.B.2, Defendants' deliberate failure to follow legally-required procedures when Defendants removed and placed Plaintiff Children with

Plaintiff Caregivers and Defendants' failure to license Plaintiff Caregivers as foster parents does not negate Plaintiffs' right to receive foster care maintenance payments.

While "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion," the SSA clearly requires the State to take certain actions, and confer certain benefits, when it has decided a child is in an unsafe environment. *Id*. at 756; 42 U.S.C. §§ 671(a)(16), 671(a)(29), 672(a), 675(1)(A). While the state may retain discretion to determine the severity of a child's situation, the steps it must take upon making that determination are mandated by statute. Therefore, Plaintiffs have precisely the "legitimate claim of entitlement" to foster care maintenance payments contemplated by *Board of Regents*. 408 U.S. at 577.

Further, children in foster care and their caretakers have a substantive due process claim to "adequate food, shelter, clothing, medical care, and reasonable safety." *Marisol A.*, 929 F. Supp. at 676 (finding that children who were at risk of abuse whose cases were "mishandled" by a state agent could state a claim for a due process right to adequate care). Once the deprivation of a constitutionally protected liberty or property interest has been demonstrated, a court must determine whether a plaintiff was afforded adequate due process protection. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Pursuant to 42 U.S.C. § 671(a)(12), the state is required to provide "an opportunity for a fair hearing before the State agency to any individual whose claim for benefits available pursuant to this part is denied or is not acted upon with reasonable promptness."  CFSA has violated Plaintiffs' procedural due process rights by failing to notify Plaintiff Caregivers of the option to become licensed kinship foster parents, by denying Plaintiff Caregivers' requests for licensure as foster parents, and by failing to provide benefits to the Plaintiff Children and Plaintiff Caregivers, in each case without providing Plaintiffs the opportunity for a fair hearing.

Further, Defendants have deprived Plaintiff Children of their right to familial integrity and have done so without providing sufficient procedural safeguards. Although the need to protect children from abuse and neglect is a well-recognized, compelling reason to disrupt familial integrity, such disruption cannot occur without following the required procedures.

Defendants rightly argue that "parents have a fundamental liberty interest in family integrity." Mot. at 30. What they fail to recognize, however, is that "children enjoy the corresponding familial right to be raised and nurtured by their parents." *Berman v. Young*, 291 F.3d 976, 983 (7th Cir. 2002) (citing *Troxel v. Granville*, 530 U.S. 57, 65-66 (2000)). Specifically, CFSA is required to file a neglect petition in the D.C. Family Court when it determines a child must be removed from their home. Defendants' failure to petition the court violates Plaintiff Children's right to familial integrity as it does not provide the opportunity for a full hearing regarding whether the child could be adequately protected in their home with the provision of services and resources or whether removal is necessary.

Plaintiffs' interactions with CFSA and custody hearings in D.C. Family Court do not constitute "adequate process" required to deprive Plaintiffs of their protected liberty and property interests. Further, Defendants' actions undercut their own argument: Defendants diverted these Plaintiff Children to Plaintiff Caregivers, apparently believing the caregivers would provide a suitably safe and nurturing environment for the removed children. That Plaintiff Caregivers were later denied licensure as foster parents – in spite of CFSA's initial determination that they should take custody of the children – underscores the agenda-driven nature of the agency's decision-making and the corresponding manifest deprivation of due process. Accordingly, the Court should find that Plaintiffs have adequately stated a claim that Defendants' conduct violates Plaintiffs' Due Process rights.

**VI.    PLAINTIFFS   ADEQUATELY   ALLEGE   CLAIMS   OF   INTENTIONAL DISCRIMINATION ON THE BASIS OF FAMILIAL STATUS UNDER THE DISTRICT OF COLUMBIA HUMAN RIGHTS ACT ("DCHRA")**

The DCHRA prohibits both intentional and unintentional discrimination against members of a protected class.  It is "an unlawful discriminatory practice for a District government agency or office to limit or refuse to provide any facility, service, program, or benefit to any individual on the basis of an individual's actual or perceived: . . . familial status." D.C. Code § 2-1402.73. "Any practice which has the effect or consequence of violating any of the provisions of this chapter shall be deemed to be an unlawful discriminatory practice." § 2-1402.68.  The DCHRA defines "familial status" as "one or more individuals under 18 years of age being domiciled with: (1) a parent or other person having legal custody of the individual; or (2) the designee, with written authorization of the parent, or other persons having legal custody of individuals under 18 years of age." D.C. Code § 2-1401.02(11A).  The DCHRA also protects any person who is "pregnant or in the process of securing legal custody of any individual under 18 years of age."  *Id.*

The D.C. Council enacted DCHRA as "'the most comprehensive of its kind in the nation,'" *see Jackson v. Dist. of Columbia Bd. of Elections and Ethics*, 999 A.2d 89, 98 (D.C. 2010) (citing D.C. Council, Comm. on Pub. Servs. and Consumer Affairs, Report on Bill 2–179 at 1 (July 5, 1977)), and the D.C. Court of Appeals has explicitly noted that the Council "'intended the Human Rights Act to be a powerful, flexible, and far-reaching prohibition against discrimination of many kinds" and should not be interpreted as being "'limited to' those aspects [of discrimination] specifically described [in the text of the Act]." *Id.* at 98 (quoting § 2-1401.01). Accordingly, Courts have held that the DCHRA should be construed broadly.  *See George Washington Univ. v. D.C. Bd. Of Zoning Adjustment*, 831 A.2d 921, 939 (D.C. 2003) ("The Human Rights Act is a broad remedial statute and it is to be generously construed."); *Estenos v. PAHO/WHO Federal Credit*

*Union*, 952 A.2d 878, 887 (D.C. 2008) ("we must read the words of the DCHRA liberally consistent with the Act's sweeping statement of intent.").

As exemplified in this case, when CFSA diverts children to live with relatives, and those relatives file for legal custody of the children in court, either at CFSA's suggestion or otherwise, CFSA treats those caregivers differently than caregivers who do not have or are not seeking legal custody, in violation of the DCHRA.  Specifically, CFSA refuses to license as foster parents those relatives who are seeking or who obtain legal custody of diverted children.  By contrast, if a relative does not seek or obtain legal custody of a diverted child, CFSA formally places the child in the physical custody of a licensed foster parent, however, that foster parent is never granted legal custody of the child.  Rather, CFSA retains legal custody of the child in foster care.

Defendants try to analogize the present facts to those in *McNair v. District of Columbia*, 213 F. Supp. 3d 81 (D.D.C. 2016), see Mot. at 35.  The court in McNair held that the plaintiff failed to establish gender discrimination where her allegations "suggest[ed] that, at best, she was treated differently from all other employees—which presumably includes both men and women." 213 F.Supp. at 87.  But McNair is readily distinguishable from the present case. By failing to provide relative caregivers with the same benefits and services it provides to non-relative caregivers, CFSA intentionally treats relative caregivers, such as Plaintiff Caregivers, who have or are seeking legal custody of the children in their care (and who therefore fall within the DCHRA's definition of familial status) differently from licensed foster parents, who have only physical custody of the children in their care (and accordingly, do not meet the DCHRA's definition of familial status).  Contrary to Defendants' suggestion, this discriminatory practice does not hinge on the presence of minor children in the home, which is true of both groups, but rather on the caregivers' legal relationship to those minor children. Furthermore, while the Plaintiff in

McNair was not able to proceed on her gender discrimination claim, she was allowed to proceed on her racial discrimination claim by alleging "that the denial of her telecommuting request was racially discriminatory because she alleged that coworkers of a different race were allowed to work from home." *See* Def. Mot. at 36.  Plaintiffs allege that the denial of the benefits provided to licensed foster parents is a direct result of the Plaintiffs Caregivers' familial status, and the claim should be allowed to proceed as in *McNair*.

## VII.   PLAINTIFFS ADEQUATELY STATE A CLAIM FOR NEGLIGENCE

To establish negligence, a plaintiff must prove "a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and damage to the interests of the plaintiff, proximately caused by the breach." *District of Columbia v. Turner*, 532 A.2d 662, 666 (D.C. 1987) (quoting *Dist. of Columbia v. Cooper*, 483 A.2d 317, 321 (D.C. 1984) (citations omitted)). Plaintiffs have alleged sufficient facts to show that Defendants had a duty of care to the Plaintiffs, which arises out of Defendants' special relationship to abused and neglected children, and Defendants breached that duty, causing damage to the plaintiffs' interests. Am. Compl. ¶¶ 122-24.

A "special relationship" exists between CFSA and D.C.'s abused and neglected children, imposing statutorily-defined duties and responsibilities to those children on the agency and its employees. *Id*. at 668.  In particular, this jurisdiction recognizes that the Child Abuse Act imposes "upon certain public officials specific duties and responsibilities which are intended to protect a narrowly defined and otherwise helpless class of persons: abused and neglected children." *Id*. at 668.  That special relationship renders the District liable to members of that protected class for the negligence of its agency. As in *Turner*, Plaintiffs here allege that CFSA has been negligent in fulfilling its duty to protect and serve children in abusive environments. There can be no reasonable

dispute that Plaintiff Children's status as members of the class that the Child Abuse Act is designed to protect allows them to assert such a claim.

Defendants breached the duty of care they owed to Plaintiff Children. Once CFSA had determined the Plaintiff Children were abused and/or neglected and could not be adequately protected in their home through the provision of services, CFSA had a legal duty to remove Plaintiff Children, petition the D.C. Family Court and seek legal custody of the children, place the children with a licensed foster parent, and provide certain benefits and services to them, including foster care maintenance payments, a case plan, and services to ensure the safety and well-being of the child. §§ 4-217.01, 4-1301.09, 4-1303.04(c)(2), 4-1301.07(a), 16-2309(a)(3).   By failing to take such actions, and instead engaging in the practice of kinship diversion, Defendants breached its duties to Plaintiffs.

As for Defendants' suggestion that Plaintiffs have failed to alleged injury giving rise to a claim for monetary relief, it is well established that, when a special relationship exists between the defendant and plaintiff, wherein the defendant has an obligation to care for the plaintiff's economic well-being, the defendant may be held liable under a negligence theory for economic losses suffered by the plaintiff. *Aguilar v. RP MRP Wash. Harbour, LLC*, 98 A.3d 979, 985-86 (D.C. 2014); *Whitt v. Am. Prop. Constr., P.C.*, 157 A.3d 196, 206 (D.C. 2017). Where a defendant is expressly obligated to care for a plaintiff's economic well-being, or undertakes action that implicates plaintiffs' "economic expectancies," such a special relationship exists. *Whitt*, 157 A.3d at 205. Because the Child Abuse Act creates a "special relationship" between Plaintiff Children and Defendants, the economic losses the Plaintiffs have incurred due to Defendants' failure to fulfill their statutory obligations constitute a *prima facie* injury for purposes of their negligence

- 38 -

claim. *Turner*, 532 A.2d at 666.  Therefore, Plaintiffs have suffered an injury sufficient for bringing a claim of negligence against Defendants.

## VIII.   PLAINTIFFS HAVE ADEQUATELY PLEADED A CLAIM FOR FRAUDULENT MISREPRESENTATION.

Plaintiffs have adequately pleaded, with particularity, fraudulent misrepresentation by Defendants' agents, alleging facts showing Defendants' intentionally failed to disclose material information which they had a duty to disclose. As Defendants acknowledge, to plead fraudulent misrepresentation, a plaintiff must allege facts showing that a person/entity: (1) "made a false representation of or willfully omitted a material fact; (2) had knowledge of the misrepresentation or willful omission; (3) intended to induce [another] to rely on the misrepresentation or willful omission; (4) the other person acted in reliance on that misrepresentation or willful omission; and (5) suffered damages as a result of [that] reliance." *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1130 (D.C. 2015) (quoting *Schiff v. Am. Ass'n of Retired Persons,* 697 A.2d 1193, 1198 (D.C. 1997)). The Amended Complaint describes in detail the circumstances under which identified CFSA employees came into contact with Plaintiffs (Hoffman-KH: Am. Compl. ¶¶ 42-59; Reid-M.M.: ¶¶ 60-78; Date-L.C.: ¶¶ 79-94) and alleges that those CFSA employees "knowingly" omitted facts they had a duty to disclose under § 671(a)(29) "with the intent to induce reliance." Am. Compl. ¶ 126. Plaintiffs' allegations in the Amended Complaint therefore adequately meet the pleading requirements.

With respect to the first element, Defendants concede, as they must, that the false representation may be a failure to disclose a material fact when a duty to disclose that fact has arisen. *Sundberg*, 109 A.3d at 1131 (quoting *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 438 (D.C. 2013)). Defendants acknowledge that § 671(a)(29) "requires" them to "provide notice to a child's family members and relatives," including their "options." Mot. at 40. As discussed in

Part III.D above, the specific options Defendants must explain are those "the relative has under Federal, State, and local law to participate in the care and placement of the child." § 671(a)(29)(B). Defendants contend that language "does not, by its terms, require specific disclosures," but the plain language of § 671(a)(29) compels the opposite conclusion: it requires that the state "explain[] the options the relative has under Federal, State, and local law to participate in the care and placement of the child" and "describe[] the requirements…to become a foster family home and the additional services and supports that are available for children placed in such a home." That is plainly sufficient specificity to give rise to a duty to disclose, particularly where, as here, Defendants' agents are alleged to have neither explained the options nor described the requirements for licensing to the Plaintiff caregivers.

Defendants claim that Plaintiffs have failed to meet the pleading standard because the Amended Complaint does not claim that CFSA employees had knowledge of the falsity of their willful omission. *See* Mot. at 41. This claim, however, relies on an incorrect interpretation of Rule 9(b) of the Federal Rules of Civil Procedure, which requires only that "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Further, the cases Defendants cite do not support Defendants' incorrect reading of Rule 9(b)'s "knowledge" pleading requirement. In *De La Fuente v. DNC Services Corp.*, the Court concluded the plaintiff failed to meet Rule 9(b)'s particularity requirements because the pleading did not say who made the misrepresentation or when, or that the plaintiff relied on it. Civil Action No. 18-336 (RC), 2019 WL 1778948, at *10-11 (D.D.C. Aug. 2, 2019). The instant Amended Complaint has none of those defects. Likewise, in *Plummer v. Safeway, Inc.*, the plaintiff did not "specify any misrepresentation, nor provide any facts to support an inference of fraudulent misrepresentation." 934 F. Supp. 2d 191, 199 (D.D.C. 2013). Again, that is a far cry from the allegations in the

Amended Complaint.  In any event, in both *De La Fuente* and *Plummer*, the court found the plaintiffs failed to state a claim on other grounds and did not address the knowledge element. As discussed above, the Amended Complaint satisfies the elements required to plead a claim, and the fact that Plaintiffs "generally" allege that CFSA employees "knowingly" omitted facts they had a duty to disclose, satisfies the pleading standard.

Defendants also broadly, and wrongly, state that Plaintiffs have not pleaded with particularly other elements of fraudulent misrepresentation. Defendants' Motion does not specifically dispute the sufficiency of Plaintiffs' allegations as to reliance, and they are sufficient. "The maker of a fraudulent misrepresentation is subject to liability for pecuniary loss suffered by one who justifiably relies upon the truth of the matter misrepresented, if his reliance is a substantial factor in determining the course of conduct that results in his loss." *Va. Acad. of Clinical Psychologists v. Grp. Hospitalization & Med. Servs., Inc.*, 878 A.2d 1226, 1238 (D.C. 2005) (citing Restatement (Second) of Torts § 546 (1977)). "It is not ... necessary that a plaintiff's reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct ... It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision." *Id.* (quoting *City Sols. Inc. v. Clear Channel Commc'ns, Inc.,* 365 F.3d 835, 840 (9th Cir. 2004) (alterations in original) (citations omitted)). Here, the Amended Complaint alleges that Plaintiff Caregivers met with the respective identified CFSA agents, were urged to take a single course of action without being informed of their other options, and then took the course the government experts told them to take. (Hoffman-KH: Am. Compl. ¶¶ 42-59; Reid-M.M: ¶¶ 60-78). As alleged in the Amended Complaint, faced with a stressful, unfamiliar situation, Plaintiff Caregivers reasonably relied on the CFSA authorities and took the actions those CFSA agents directed.

Defendants also do not specifically dispute the specificity of Plaintiffs' allegations of harm resulting from the CFSA agents' willful omissions, and those are similarly pleaded with particularity. In addition to non-monetary harm, Plaintiffs specify the amount of foster care maintenance payments they have not received each month. (Am. Compl. ¶¶ 55, 75, 90).

Defendants seem to suggest that there are simply not enough facts in the Amended Complaint to support a fraudulent misrepresentation claim. But pleading with particularity need not equate to pleading at length, as long as all of the required elements are plausibly pleaded. *See Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 78 (D.D.C. 2005) (concluding that the plaintiff stated a claim for fraudulent misrepresentation when he pleaded "the subject matter of the alleged misrepresentation, identifie[d] which defendant allegedly made the misrepresentation, and attribute[d] the misrepresentation to a particular period of time"); *D'Ambrosio v. Colonnade Council of Unit Owners*, 717 A.2d 356, 361 (D.C. App. 1998).  In *D'Ambrosio*, the owner of a condominium sued the building council for fraudulent misrepresentation after a frozen pipe burst, damaging his property. *Id.* Although the trial court dismissed the fraud claim, the D.C. Court of Appeals  reversed, concluding that, while the fraud claim was pleaded in "extremely 'short and plain' terms," it was pleaded with particularity and contained each of the five elements of fraud: the plaintiff alleged the time as "prior to purchasing" his unit; the place of the alleged fraud was the Colonnade Condominium; the content of the misrepresentation were statements that there were no problems with the building or unit; and what plaintiff gave up was the opportunity not to purchase the unit resulting in the "expenses of owning, maintaining, and rehabilitating." *Id.* (citing *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977)).  Accordingly, the Court held that the pleading "satisfied one of the purposes of Rule 9: to ensure that the allegations are specific enough to inform

- 42 -

the Colonnade Council of the act of which D'Ambrosio complains and to enable it to prepare an effective response and defense." *Id.* (citation omitted).

Plaintiffs have pleaded more facts pertinent to the fraud than the plaintiffs in *D'Ambrosio* or *Daisley*. Contrary to Defendants' suggestion, the Amended Complaint names the CFSA agents who made the statements; states where and when the misrepresentations occurred; notes what Defendants said and what they did not say, but were required by law to; and explains how Plaintiffs reasonably relied on the willful omissions and suffered damages as a result. *See* ¶ 37; Hoffman-KH: Am. Compl. ¶¶ 48-52, 127; Reid-M.M: ¶¶ 66-69, 128; Date-L.C.: ¶¶ 84-86, 129. Accordingly, the Amended Complaint has been pleaded with sufficient particularity for a fraudulent misrepresentation claim and the Court should deny the Motion with respect to this claim.

## IX.   PLAINTIFFS HAVE ADEQUATELY STATED A CLAIM FOR NEGLIGENT MISREPRESENTATION

As Defendants concede, "a complaint alleging negligent misrepresentations need not allege that the defendant had knowledge of the falsity of the representation or the intent to deceive." *Sundberg*, 109 A.3d at 1131 (citing *Kumar v. Dist. of Columbia Water & Sewer Auth.,* 25 A.3d 9, 15 (D.C. 2011)). A plaintiff must only allege facts showing that the defendant: (1) "made a false statement or omitted a fact that he had a duty to disclose"; (2) that it "involved a material issue"; and (3) that the plaintiff "reasonably relied upon the false statement or omission to his detriment." *Sundberg*, 109 A.3d at 1131 (citing *Kumar,* 25 A.3d at 15 n.9). Contrary to Defendants' brief argument regarding Count VII, Plaintiffs have pleaded sufficient facts to support these elements.

In *Ponder v. Chase Home Fin., LLC*, a borrower sued his mortgage lender for, among other torts, negligent misrepresentation. 865 F. Supp. 2d 13, 20 (D.D.C. 2012). In his complaint, the plaintiff pleaded that he had called his mortgage lender about a loan modification. *Id.* The lender agent assured him that there would be sufficient time for the modification to go through and later

said the modification went through. *Id.* The borrower later learned the mortgage lender had proceeded with the foreclosure even after telling the borrower that it would cease. *Id.* The Court denied the bank's motion to dismiss because it had misrepresented material facts related to the status of the approval and the foreclosure proceeding and should have known that the borrower would rely on the agent's communications, which he plausibly pleaded he had. *Id.* Like the borrower in foreclosure in *Ponder*, Plaintiffs were vulnerable people in difficult situations relying on institutional experts to guide them to a safe and positive result. Like the agents in *Ponder*, the CFSA agents misrepresented Plaintiffs' options, which misrepresentation Plaintiffs reasonably relied on, leading to a bad result, financial and otherwise, for which Plaintiffs now seek redress.

Defendants suggest that the "options" they concede § 671(a)(29) requires them to explain are "legal," not "factual," and therefore failure to explain them as required by statute cannot be a misrepresentation. First, the case Defendants cite for this proposition is distinguishable. *See Falconi-Sachs v. LPF Senate Square, LLC*. 142 A.3d 550, 552-53 (D.C. 2016) (*per curiam*). In *Falconi-Sachs*, a tenant sued her landlord, alleging that the landlord falsely represented that she was obliged to pay a late fee and any associated attorney's fees. *Id*. at 555. The appellate court affirmed the dismissal of the misrepresentation counts on the basis that the obligation to pay was a matter of law, not fact, and defendants were not subject to a duty to disclose. *Id*.  While *Falconi-Sachs* concerned defendant's interpretation of law, in this case, the misrepresentation concerns Defendants' failure to disclose material *facts* – namely, the *options* Plaintiff Caregivers had for the protection of the child in need – and those were facts that Defendants had a statutory duty to disclose.

For the reasons stated above, Plaintiffs have therefore pleaded with sufficient particularity that CFSA agents omitted material facts they had a duty to disclose, and Plaintiff Caregivers

reasonably relied on those omissions and suffered damages as a result. Accordingly, the Court should deny the Motion with respect to this claim.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss in its entirety.  If the Court determines that any of the claims subject to that motion have not been sufficiently pleaded, Plaintiffs respectfully request that they be granted leave to amend to cure any deficiencies.

Dated: March 20, 2020

By:   /s/ Samantha Badlam

---

Samantha Badlam (D.C. Bar #977190)
Peter Brody (D.C. Bar # 398717)
Scott McKeown (D.C. Bar # 314459)
ROPES & GRAY LLP
2099 Pennsylvania Ave NW
Washington, DC 20006
Telephone:  (202) 508-4600
Facsimile:  (202) 508-4650
samantha.badlam@ropesgray.com
peter.brody@ropesgray.com
scott.mckeown@ropesgray.com

Marla Spindel (D.C. Bar # 443306)
Stephanie McClellan (D.C. Bar # 485658)
DC KinCare Alliance
1101 Connecticut Avenue, NW, Suite 450
Washington, DC 20006
marla@dckincare.org
stephanie@dckincare.org

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 20, 2020 I caused a true and correct copy of the foregoing

document to be served upon all counsel of record via the ECF system.


By:   /s/ Samantha Badlam
_____

Samantha Badlam (D.C. Bar #977190)
Peter Brody (D.C. Bar # 398717)
Scott McKeown (D.C. Bar # 314459)
ROPES & GRAY LLP
2099 Pennsylvania Ave NW
Washington, DC 20006
Telephone:  (202) 508-4600
Facsimile:  (202) 508-4650
samantha.badlam@ropesgray.com
peter.brody@ropesgray.com
scott.mckeown@ropesgray.com

Marla Spindel (D.C. Bar # 443306)
Stephanie McClellan (D.C. Bar # 485658)
DC KinCare Alliance
1101 Connecticut Avenue, NW, Suite 450
Washington, DC 20006
marla@dckincare.org
stephanie@dckincare.org

*Attorneys for Plaintiffs*