## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| K.H., *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>**DISTRICT OF COLUMBIA**, *et al.*,<br><br>    *Defendants*. | Civil Action No. 19-3124 (TFH) |

### DEFENDANTS' REPLY IN SUPPORT OF
### MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

### INTRODUCTION

Plaintiffs challenge the Child and Family Services Agency's (CFSA) practice of kinship diversion—informally placing children in the care of relatives with the consent of the parents—but that practice is not prohibited by federal or local law. In their opposition to the District of Columbia's (the District)[1] motion to dismiss, plaintiffs fail to overcome the District's arguments or present controlling case law to support the allegations in the Amended Complaint. Plaintiffs rely on cases interpreting "similar" or "analogous" language from other statutes, but those cases are unpersuasive and outdated.

CFSA's broad powers to assist neglected and abused children easily encompass kinship diversion, and the District's actions—even if described accurately by

---

[1]     Defendants are CFSA and the District (collectively, the District).

plaintiffs—do not violate the D.C. Child Abuse and Neglect Act, Adoption Assistance and Child Welfare Act of 1980 (AACWA), D.C. Human Rights Act (HRA) or the Fifth and Fourteenth Amendments of the Constitution. In addition, plaintiffs' common law claims of negligence, fraudulent misrepresentation and negligent misrepresentation cannot be sustained. The Complaint should be dismissed with prejudice.

## ARGUMENT

### I.    Plaintiffs Fail To Correctly Interpret the D.C. Child Abuse and Neglect Act.

Plaintiffs argue that the District relies on an "incorrect interpretation" of the D.C. Child Abuse and Neglect Act (the Act). Pls.' Opp. [18] at 5; D.C. Code §§ 4-1301.01, *et seq.* (2019 Supp.). Plaintiffs' arguments are misplaced.[2]

Plaintiffs assert that, almost 20 years ago, the District revised the Act to "revoke" CFSA's authority to make "third-party placements." Pls.' Opp. at 5 (citing D.C. Law 13-277, 48 D.C. Reg. 2043 (Apr. 4, 2001)). Plaintiffs' argument is, at best, a red herring. The repealed provision, D.C. Code § 4-1303.04(a), authorized a temporary custodial placement for up to five days.[3] D.C. Law 13-277, § 2(p), 48 D.C.

---

[2]    Plaintiffs also include a "Statement of Facts," Pls.' Opp. at 3–4, but they cannot revise their allegations this way. *See, e.g., Citizens for Responsibility and Ethics in Washington v. U.S. Department of Homeland Security*, 387 F. Supp. 3d 33, 54 (D.D.C. 2019) ("[A] plaintiff cannot amend its complaint by the briefs in opposition to a motion to dismiss.") (quoting *Woytowicz v. George Washington Univ.*, 327 F. Supp. 3d 105, 121 (D.D.C. 2018)).

[3]    *See* D.C. Code § 4-1303.04(b) (2001). These temporary "5 day holds" allowed CFSA the option of trying to resolve the issue short of going to court for formal custody proceedings. The repeal eliminated placements into unlicensed homes, which was criticized by the courts as reducing placement options. *See* Committee Report, below, at 6 (The legislation "effectively eliminates placement options by relegating the placement of all children to licensed foster homes.") CFSA remains able to seek—as

Reg. 2043 (Apr. 4, 2001). "Third party" in that context meant temporary, unlicensed, informal, short-term placements. *See* Council of the District of Columbia, Committee on the Judiciary, Report on Bill 15-389, the "Child in Need of Protection Act of 2003," November 14, 2004 (Committee Report), at 5, 9, available at *http://lims.dccouncil.us/Download/12958/B15-0389-CommitteeReport1.pdf*. The phrase does not encompass what CFSA does with kinship diversion today and the legislative history cited does not support plaintiffs' position—the limited context in which the Council repealed the cited provision did not prohibit what CFSA is currently doing.[4] If plaintiffs were correct, the court in *LaShawn* would have allowed their repeated efforts to intervene and challenge the process they challenge here. *See LaShawn A. v. Bowser*, Civil Action No. 89-1754 (TFH).

Plaintiffs also assert that this legislative history and the "plain language" of D.C. Code § 4-1303.04(c) mandate CFSA action (not including kinship diversion) and do not allow the agency to exercise its broad authority. Pls.' Opp. at 7. Plaintiffs simply state this, in conclusory fashion, but do not explain how. As the District demonstrated, the use of "is authorized to" prior to listing the three options in that

---

it did here—alternatives to foster care made voluntarily by the parents, where the children go to a relatives' home, without court intervention. That practice was not eliminated by the change in the law and plaintiffs have failed to show that it is "prohibited."

[4]    Plaintiffs fail to distinguish the provision giving CFSA broad discretion, D.C. Code § 4-1303(a)(7), merely stating that the Council could not have intended that provision to operate as broadly as it does because of the language it "deliberately eliminated" in that same legislation. Pls.' Opp. at 7. But that argument fails for the reasons stated:  the limited context in which the repealed language was used does not apply here.

provision suggests that these are simply examples, not an exclusive list of the actions CFSA *must* take. *See* D.C. Code § 4-1303.04(c). The broad authority and discretion of CFSA—refined and clarified over the years as part of the *LaShawn* litigation—allows the practice of kinship diversion. Plaintiffs have not shown otherwise.

## II.   Plaintiffs' Allegations Fail To Establish That the District Has Violated Federal Law or That the Cited Provisions Are Privately Enforceable (Count I).

### A.   The AACWA Does Not Prohibit Kinship Diversion.

Plaintiffs argue that the District has violated certain provisions of the AACWA, 42 U.S.C. § 670, *et seq.* (part of the Social Security Act), and that those provisions are enforceable by private suit under 42 U.S.C. § 1983. Pls.' Opp. at 7–8 (citing *Blessing v. Freestone*, 520 U.S. 329 (1997)).[5] Plaintiffs are incorrect in their application of *Blessing*, and their analysis is outdated, as recent, controlling precedent reveals.[6]

In *Gonzaga Univ.*, the Supreme Court clarified the enforceability test laid out in *Blessing. See Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 330 n.2

---

[5]    Specifically, plaintiffs seek to enforce 42 U.S.C. §§ 671(a)(10), 671(a)(22), 671(a)(29), 672(a)(2), and 672(c). The other section cited by plaintiffs, 42 U.S.C. § 675, contains definitions. But definitions cannot confer enforceable rights by themselves. *31 Foster Children v. Bush*, 329 F.3d 1255, 1271 (11th Cir. 2003) (where provisions "are definitional in nature, they alone cannot and do not supply a basis for conferring rights enforceable under § 1983") (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 280 (2002)).

[6]    Plaintiffs' citation to *Duberry v. District of Columbia*, 824 F.3d 1046 (D.C. Cir. 2016) as support for their invocation of the original *Blessing* test does not help, because the law challenged there did not arise under the Spending Clause "where the Supreme Court has embraced a *narrow* interpretation of private damages actions, absent clear contrary congressional intent, because 'the typical remedy for state noncompliance with federally imposed conditions is *not* a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State.'" *Id.* at 1056 (emphasis added) (quoting *Gonzaga*, 536 U.S. at 280)

(2015) (explaining that *Gonzaga* expressly rejected the notion that something "short of an unambiguously conferred right" can support a cause of action under § 1983). But plaintiffs largely ignore that precedent and instead proceed as if *Blessing* still stands intact, arguing that each provision they cite is privately enforceable here. Because plaintiffs' arguments rest on their flawed citation of *Blessing*, they fail.[7]

First, plaintiffs acknowledge, as they must, that there are no controlling opinions from the D.C. Circuit on the provisions they cite. Pls.' Opp. at 8. And the cases plaintiffs cite are not persuasive. *Cf. Gonzaga*, 536 U.S. at 280 (discussing *Suter v. Artist M.*, 503 U.S. 347, 357 (1992), which held that "[s]ince the [AACWA] conferred no specific, individually enforceable rights, there was no basis for private enforcement, even by a class of the statute's principal beneficiaries.").

Plaintiffs do not dispute that the AACWA is Spending Clause legislation. It is true, as plaintiffs note, that Congress subsequently amended the AACWA to expressly address the holding in *Suter* and make certain provisions of that law privately enforceable. Pls.' Opp. at 9 (citing *N.Y. State Citizens' Coal. for Children v.*

---

[7]      *See, e.g.*, *Long v. District of Columbia Housing Auth.*, 166 F. Supp. 3d 16, 29 (2016) ("[S]ince *Blessing*, however, '[t]he Court's approach to § 1983 enforcement of federal statutes has been increasingly restrictive; in the end, very few statutes are held to confer rights enforceable under § 1983.") (quoting *Johnson v. Housing Auth. of Jefferson Parish*, 442 F.3d 356, 360 (5th Cir. 2006)). *See also Does v. Gillespie*, 867 F.3d 1034, 1039–40 (8th Cir. 2017) ("Later decisions, however, show that the governing standard for identifying enforceable federal rights in spending statutes is more rigorous. … It is now settled that nothing "short of an unambiguously conferred right" will support a cause of action under § 1983.") (quoting *Gonzaga*, 536 U.S. at 283).

5

*Poole*, 922 F.3d 69, 83 n.7 (2d Cir. 2019)).[8] Fatal to plaintiffs' claims here, however, is that *none* of the provisions plaintiffs cite were so amended. If Congress amended *some* provisions of the law to expressly permit enforceability, but not others, that fact is dispositive. *See Gonzaga*, 536 U.S. at 286 ("[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action."). Consequently, plaintiffs are forced to argue "implied enforceability" through *Blessing* and, as shown below, they fail.

Plaintiffs also note that the *LaShawn* plaintiffs sued under some of the same provisions cited in this case and that that court "specifically determined that many of these provisions are enforceable." Pls.' Opp. at 9. But context matters. *LaShawn* is a decades-old class action seeking systemic reforms; the instant suit is brought by individual plaintiffs seeking damages, in a system that scarcely resembles the one challenged in *LaShawn*.[9] Notwithstanding that neither the trial court nor the D.C. Circuit passed on the specific questions presented here, the referenced decisions

---

[8]     Plaintiffs also fail to distinguish *Melton v. District of Columbia*, 85 F. Supp. 3d 183 (D.D.C. 2015). There, the plaintiff father claimed that CFSA had violated the AACWA by failing to make "reasonable efforts" to provide him services or allow him to participate in his son's case planning. *Id.* at 191. The court explicitly held that "[a] private individual has no cause of action under either the Act itself or through an action under 42 U.S.C. § 1983." (citing *Suter*, 503 U.S. at 350–51). *Melton* was decided after Congress amended the AACWA in response to *Suter*, so the fact that Mr. Melton "did not cite to a [specific] provision" of the law, Pls.' Opp. at n.8, is entirely irrelevant. *Melton* remains good law and its analysis should inform this Court.

[9]     Plaintiffs also seek injunctive relief, but only to prohibit the specific practice— kinship diversion—challenged here. *See* Am. Compl. at 55.

occurred, as plaintiffs concede, almost 30 years ago, prior even to *Blessing*. The creation of CFSA and its broad powers are a direct result of *LaShawn* and to argue that the case—explicitly or implicitly—prohibits kinship diversion is wrong.

      B.    <u>Plaintiffs Fail To Show an Individually Enforceable Right under 42 U.S.C. §§ 672(a) and 675(4)(A) of the AACWA.</u>

    Plaintiffs argue, again using the outdated *Blessing* analysis, that § 672(a) confers a monetary entitlement to foster care maintenance payments "to children who have been removed from their parents' homes and placed in foster care, and designates foster parents as authorized recipients of these payments." Pls.' Opp. at 10 (citing *California State Foster Parent Ass'n v. Wagner*, 624 F.3d 974, 980 (9th Cir. 2010)). Notwithstanding that two of the three statutorily required elements are missing here (the plaintiff children are not in foster care and the adult plaintiffs are not foster parents), plaintiffs are incorrect, as more persuasive precedent shows.

    Even if the obsolete *Blessing* test applied, it would fail here at the first step. "[C]ongress did not use rights creating language [in §§ 672(a) and § 675(4)(A)]." *Midwest Foster Care and Adoption Ass'n v. Kincade*, 712 F.3d 1190, 1198 n.5 (8th Cir. 2013).[10] "The asserted provisions inescapably serve to establish restrictions on

---

[10]    *Kincade* also comprehensively rebuts the analysis used in *Wagner*, on which plaintiffs here extensively rely: "The dissent and our colleagues on the Ninth Circuit identified a congressional intent that foster parents *benefit* from the receipt of foster care maintenance payments. *See* [*Wagner*, 624 F.3d at 981]. We do not disagree with this finding, but we do diverge as to its consequence. The ability to locate a nexus between § 1983 plaintiffs and a benefit conferred by a statute is necessary but not sufficient; the statutory text also "must be 'phrased in terms of the persons benefitted.'" *Gonzaga*, 536 U.S. at 284." 712 F.3d at 1199 (additional citations omitted).

the state foster care expenditures that will be eligible for federal matching. This focus on the states as regulated entities evinces, as in *Gonzaga*, a degree of removal from the interests of the Providers." *Id.* at 1199. Although the Ninth Circuit in *Wagner* cited *Gonzaga*, it declined to apply it, finding California's reliance on it "misplaced," 624 F.3d at 980, and falling back on the outdated *Blessing* test.[11]

The Second Circuit in *Kincade*, in contrast, relied on *Gonzaga*, and held that these two provisions were *not* individually enforceable in suits under 42 U.S.C. § 1983. "[W]hen a statute links funding to substantial compliance with its conditions—including forming and adhering to a state plan with specified features—this counsels against the creation of individually enforceable rights." *Kincade*, 712 F.3d at 1200 (citing *Gonzaga*, 536 U.S. at 288). Plaintiffs criticize the *Kincade* analysis, noting that the court "analyzed only the first *Blessing* factor." Pls.' Opp. at 12. But the Second Circuit did so for good reason: "Because the Providers have failed to show a 'clear and unambiguous' congressional intent to the asserted right, we need not analyze the remaining *Blessing* factors." *Kincade*, 712 F.3d at 1200 (citing *Gonzaga*, 536 U.S. at 290–91).

Plaintiffs similarly err when they argue that "the right to receive foster care maintenance payments under [the AACWA] 'arises from the status of the child as a subject of prior neglect.'" Pls.' Opp. at 15 (citing *Miller v. Youakim*, 440 U.S. 125 (1979)). The Supreme Court in *Miller* did not address the issue of foster care

---

[11]     Plaintiffs rely on *Poole*, *Wagner*, and *D.O. v. Glisson*, 847 F.3d 374 (6th Cir. 2017), but those decisions are factually distinguishable. Plaintiffs in those cases were approved foster-care providers, a "condition precedent" that is missing here.

maintenance payments or the AACWA; it dealt with a challenge to Illinois' practice of excluding unrelated foster parents from receiving benefits under the federal Aid to Families with Dependent Children (AFDC) program. 440 U.S. 132. Notwithstanding that Congress repealed AFDC in 1996, *see Pennsylvania Dept. of Public Welfare v. United States*, 411 F.Supp.2d 586, 589 n.3 (W.D. Pa. 2006), *Miller* held that the definition of "foster family homes" included all homes that met the State's licensing requirements, even those run by foster children's relatives. 440 U.S. at 137–38.

Here, again, for reasons unexplained by plaintiffs, none of the plaintiffs have been licensed by the District; plaintiffs state, in conclusory fashion, that the District "deliberately prevented Plaintiffs from getting licensed as foster parents," Pls.' Opp. at 16, but never explain *how* that occurred. If plaintiffs had alleged that they had submitted complete and accurate applications for licensure, and met all the qualifications, but CFSA *still* denied their applications, the Court would be required to treat those allegations as true. But plaintiffs failed to do so, and that silence speaks volumes. *Cf.* Am. Compl. ¶ 90 (Plaintiff adults "if formally granted foster parent status, would be entitled to receive foster care maintenance payments[.]").

## D. Plaintiffs Do Not Have Individually Enforceable Rights to Case Plans Under §§ 671(a)(16), 675(1), and 675(5).

Plaintiffs also erroneously contend that Sections 671(a)(16), 675(1), and 675(5) of the AACWA provide them with an enforceable right to periodically review written case plans. Pls.' Opp. at 19. Plaintiffs' argument again relies on *Blessing*, their interpretation of which is overly generous, as the District demonstrated above.

Otherwise, plaintiffs attempt to distinguish the primary case cited by the District, *T.F. by Kenner v. Hennepin Cty.*, Civ. No. 17–1826, 2018 WL 940621 (D. Minn. Feb. 16, 2018), first by noting that it is "not binding on this court." Pls.' Opp. at 21. But plaintiffs fail to explain why *T.F.* is incorrect. That decision relied on the persuasive analysis of *Kincade* and found that "Section 671(a)(16) does not unambiguously confer rights on Plaintiffs to enforce the section's case-plan and case-review-system requirements." *T.F.*, 2018 WL 940621 at *6. The *T.F.* court also noted that, in 1996, Congress explicitly amended the law to authorize suits in federal court for alleged violations of another provision, § 671(a)(18). *Id.* (citations omitted). As the court observed:  "Congress's choice to amend the statute to include a private right of action for a violation of § 671(a)(18) and not any of § 671(a)'s other requirements 'is strong evidence that Congress did not intend these other various State plan elements in ... § 671(a) to confer rights enforceable pursuant to § 1983.'" *Id.* (quoting *Charlie H. v. Whitman*, 83 F. Supp. 2d 476, 489 (D.N.J. 2000)).[12]

So too here:  Congress could have amended Section 671(a)(16) to provide a private action for enforceability of the case-plan requirements of the law. The fact that Congress has not done so fatally undercuts plaintiffs' assertions.

---

[12]     *T.F.* also distinguished the primary case cited by plaintiffs here, *Henry A. v. Willden*, 678 F.3d 991 (9th Cir. 2012), noting that the Ninth Circuit there did not apply the "narrow interpretation" of *Blessing* required by later Supreme Court precedent like *Gonzaga*. 2018 WL 940621 at *6.

### E.   Plaintiffs Do Not Have an Individually Enforceable Right to Notice Under § 671(a)(29).

Plaintiffs expend several pages arguing that Section 671(a)(29) confers an enforceable right "to receive an explanation of the options the relative has to participate in the care and placement of the child." Pls.' Opp. at 22. But plaintiffs' analysis again relies primarily on *Blessing*, and—eventually—concedes, as the District pointed out in its motion, that no case (federal or state, reported or unreported) has found that the provision confers such a right. Because that provision does not set forth an "unambiguously conferred right to support a cause of action[,]" it is not enforceable through § 1983. *Gonzaga*, 536 U.S. at 283.

### F.   Plaintiffs Do Not Have an Individually Enforceable Right to Receive Services to Protect Children's Safety and Health Under § 671(a)(22).

Plaintiffs, again, erroneously engage in the *Blessing* analysis and assert that Section 671(a)(22) "clearly" confers a privately enforceable right, because it focuses on individuals. Pls.' Opp. at 25 (citing *Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277, 292 (N.D. Ga. 2003)). The District agrees with plaintiffs that the AACWA "entitles foster children to services to keep them safe and healthy[,]" *id.* at 26, and plaintiffs have not alleged that the District compromised their health or safety in any way. But, more importantly, most recent cases have held that the language in that provision does *not* confer an individually enforceable right, failing one or more elements of the *Blessing* test. *Barricelli v. City of N.Y.*, 2016 WL 4750178, *7 (S.D.N.Y. Sept. 12, 2016) (language is "too vague and amorphous to support the finding of an individually enforceable right[,]" failing second prong of *Blessing* test);

*D.G. ex rel. Stricklin v. Henry*, 594 F. Supp. 2d 1273, (N.D. Ok. 2009) ("Plaintiffs cannot meet the first prong of the analysis set forth in *Blessing* as modified by *Gonzaga*."); *Clark K. v. Guinn*, 2007 WL 1435428, *10 (D. Nev. May 14, 2007) ("[T]he language is too 'vague and amorphous' to support a private cause of action.");[13] *Carson P. ex rel. Foreman v. Heineman*, 240 F.R.D. 456, 542 (D. Neb. 2007) (same).

### G.   Plaintiffs Do Not Have an Individually Enforceable Right to Be Placed in a Foster Home Meeting the Standards of § 671(a)(10).

Plaintiffs argue that Section 671(a)(10) confers an individually enforceable right on foster children to be placed in foster homes meeting the standards set forth in that provision. Pls.' Opp. at 27. Again, plaintiffs are incorrect. *See, e.g.*, *Estate of Place v. Anderson*, 398 F.Supp.3d 816, 841 (D. Colo. 2019) (language is "is too vague and amorphous for judicial enforcement."), *appeal filed* (No. 19-1269, 10th Cir); *Barricelli*, 2016 WL 4750178 at *5 (because provision fails first element of *Blessing*, "no individually enforceable right to foster care standards is created by 42 U.S.C. section 671(a)(10)[.]"); *Clark K.*, 2007 WL 1435428 at *10 (language "is too vague and amorphous under *Blessing* to be enforced pursuant § 1983.").

Plaintiffs note that Congress amended § 617(a)(10) in 2014 to provide "more guidance," Pls.' Opp. at 29, but do not (and cannot) contend that Congress made that provision explicitly enforceable, or that any court has found that the amendment has

---

[13]   The *Guinn* court, similar to the court in *T.K.* (discussed above) also noted that the fact that Congress recently amended *other* provisions of the AACWA to explicitly authorize private suits "is strong evidence that Congress did not intend § 671(a)(22) to confer rights enforceable pursuant to § 1983." 2007 WL 1435428 at *10.

given rise to an individually enforceable right under the section. Plaintiffs' arguments should be rejected.

Finally, it seems contradictory, at best, for plaintiffs to argue that the children have an enforceable right to be placed in homes meeting safety and sanitation standards while *also* declaring that the adult plaintiffs' homes "would have been eligible" for waivers from those standards. Pls.' Opp. at n.15. ("[P]laintiff Caregivers' homes met all applicable licensing requirements or would have been eligible for non-safety related waivers."); *see also Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1116 (D.C Cir. 2000) ("[I]t is possible for a plaintiff to plead too much: that is, to plead himself out of court by alleging facts that render success on the merits impossible.").

## H.   Plaintiffs Fail To Show That Equitable Estoppel Applies Here.

Plaintiffs also argue that they relied on the District's "misrepresentations" here, and therefore equitable estoppel should apply. Pls.' Opp. at 17. Plaintiffs are incorrect, as their own citations reveal. "[E]rroneous oral and written advice given by a Government employee" to a plaintiff cannot "give rise to estoppel against the Government[.]" *Tapp v. WMATA*, 283 F. Supp. 3d 1, 7 (D.D.C. 2017) (quoting *OPM v. Richmond*, 496 U.S. 414, 415–16 (1990)). Application of the doctrine to the government "must be rigid and unsparing." *Rogers v. Executive Off. for U.S. Attorneys*, 2019 WL 1538252, *9 (D.D.C. Apr. 9, 2019) (quoting *ATC Petroleum, Inc. v. Sanders*, 860 F.2d 1104, 1111 (D.C. Cir. 1988)). For equitable estoppel to apply, a plaintiff must show:  "[1] false representation, [2] a purpose to invite action by the party to whom the representation was made, [3] ignorance of the true facts by that

party, and [4] reliance, as well as ... [5] a showing of an injustice ... and [6] lack of undue damage to the public interest." *Hall v. Dep't of Commerce*, 2018 WL 2002483, *4 (D.D.C. Apr. 30, 2018) (quoting *ATC Petroleum*, 860 F.2d at 1111).

Plaintiffs' vague allegations fail to meet this test, and their allegations fail to meet the same criterial for estoppel in the cases they cite. Although the District does not minimize plaintiffs' allegations, they do not compare with the facts of the cited cases, including prosecutors who attempted to renege on a plea agreement and deport a witness who testified against violent drug gangs. Pls.' Opp. at 18 (discussing *Ramallo v. Reno*, 931 F. Supp. 884 (D.D.C. 1996)). The court in *Ramallo* applied equitable estoppel, concluding that "when the government makes a promise that induces someone to relinquish constitutional or other substantial rights, that promise must be fulfilled." 931 F. Supp. at 892 (citations omitted). No such "relinquishment" of rights occurred here, even accepting plaintiffs' allegations as true.

"Proving equitable estoppel is warranted is not surprisingly[,] a 'high' 'hurdle' to clear. Indeed, only in 'extraordinary and carefully circumscribed instances' will the Court exercise its equitable power ...." *Hall*, 2018 WL 2002483 at *4 (quoting *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 579–80 (D.C. Cir. 1998)). That CFSA employees allegedly failed to correctly advise plaintiffs of the applicable law is insufficient to invoke the doctrine. *See id.* (Equitable estoppel would not apply even where plaintiff "'relie[d] on the government officer's or agency's interpretation of [his] legal rights.'") (quoting *Daiichi Sankyo Co., Ltd. v. Rea*, 12 F. Supp. 3d 8, 19 (D.D.C. 2013)). *See also id.* at *5 ("An agency's mere failure to provide 'information about the

… process reflect[s] passive rather than affirmative conduct' and is not enough to warrant invoking equitable estoppel.").

Plaintiffs argue that the District's failure to formally remove the children from their parents' homes and license the plaintiffs as foster parents meets the requirements for equitable estoppel. Pls.' Opp. at 18. But the missing information— which only plaintiffs can provide—is why they were not licensed or did not apply (or qualify) for the many *other* benefits authorized by District law in their specific circumstances. *See* Defs.' Mem. in Support of Mot. to Dismiss (Defs.' Mem.) [15-1] at 32–33. Plaintiffs remain silent, and that silence dooms their arguments.

## III.   Plaintiffs Fail To State an Equal Protection Claim (Count II).

Plaintiffs argue that the District denies resources to relative caregivers and children—as compared to "children and caregivers who are not related to each other"—with no rational basis for doing so, in violation of the Fifth Amendment's guarantee of equal protection. Pls.' Opp. at 30. Plaintiffs also contend that the District deliberately denied plaintiffs "benefits and services they are entitled to under SSA and D.C. law." *Id.* at 31. Plaintiffs' equal protection claim is defective in several ways.

As an initial matter, the deprivation described as the basis for the equal protection claim is nonexistent. As demonstrated above and in the District's opening brief, the use of kinship diversion does not violate federal or local law or the Constitution. *See* Sections I and II, above; *see* Defs.' Mem. at 10–22. But even if plaintiffs were correct on this point, they still fail to allege *facts* that support a claim of intentional discrimination; rather, plaintiffs state in conclusory fashion that

plaintiff caregivers were denied rights "*solely*" based on their relationship with the plaintiff children. Pls.' Opp. at 32. Without alleging any additional supporting facts, plaintiffs fail to allege the specific facts necessary to state a claim of intentional discrimination. *See Atherton v. Dist. of Columbia Office of the Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009) (affirming dismissal of equal protection claims where plaintiff's "spare facts and allegations" did "not permit the court to infer more than the mere possibility of misconduct").

To the extent plaintiffs' equal protection claim is based on the denial of plaintiffs' caregiver's licensure applications, Pls.' Opp. at 31–32, plaintiffs fail to allege any facts that would show they were treated differently from similarly situated applicants in the foster care licensure process. Plaintiffs incorrectly allege that "Defendants refused to even consider Plaintiff Caregivers for licensure of foster parents." Pls.' Opp. at 32. The Amended Complaint contradicts this claim:  Two plaintiff caregivers *did* apply for licensure but were not approved. Am. Compl. ¶¶ 55, 69, 86.[14] Plaintiffs' failure to allege specific facts regarding the District's differential treatment of applicants who are blood relatives of the children in their care— compared to non-related potential foster parents—precludes plaintiffs from stating an equal protection claim. *See Women Prisoners of the D.C. Dep't of Corr. v. District*

---

[14]    As noted previously, plaintiffs have not suggested that they submitted complete or accurate applications or were otherwise eligible for licensure or the referenced benefits. *See* Am. Compl. ¶¶ 55, 69, 86.

*of Columbia*, 93 F.3d 910, 924 (D.C. Cir. 1996) ("The dissimilar treatment of dissimilarly situated persons does not violate equal protection.").

## IV.   <u>Plaintiffs Fail To State a Due Process Claim (Count III).</u>

Plaintiffs also argue that the District violates the Due Process Clause of the Fourteenth Amendment by denying plaintiffs a property interest (foster care maintenance payments) and liberty interest (familial integrity) without due process of law. Pls.' Opp. at 32. Plaintiffs are incorrect.[15]

First, plaintiffs have no property interest because they have no "legitimate claim of entitlement" to foster care maintenance payments. *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756 ("To have a property interest in a benefit, a person must have … a legitimate claim of entitlement to it."). Plaintiffs correctly note that "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Pls.' Opp. at 33 (citing *Castle Rock,* 545 U.S. at 756). But, as discussed, plaintiffs have no entitlement to the payments under the AACWA (even if they met all of that law's eligibility requirements) and the use of the kinship diversion program falls squarely within the District's discretion. *See* Sections I and II above.

Plaintiffs also fail to identify how they were denied the opportunity to be "heard at a meaningful time and place." *Mathews v. Eldridge,* 424 U.S. 319, 333

---

[15]    The District of Columbia is subject to the requirements of the Fifth Amendment Due Process Clause, which contains an equal protection component that is considered substantially the same as the Fourteenth Amendment's Equal Protection Clause; thus, the standards developed under the Equal Protection Clause are applicable to the District. *See Fraternal Order of Police v. United States*, 152 F.3d 998, 1002 (D.C. Cir. 1998) ("Equal protection analysis is substantially identical under the Fifth Amendment and the Fourteenth") (subsequent history omitted).

(1976). Instead, plaintiffs identify three criticisms of CFSA's procedures:  (1) failing to notify plaintiff caregivers of the option to become licensed kinship foster parents; (2) denying plaintiff caregivers' requests for licensure as foster parents; and (3) failing to provide benefits to the plaintiff children and caregivers. Pls.' Opp. at 33. Rather than alleging specific procedural deficiencies, plaintiffs merely identify dissatisfaction with the outcome of foster care licensure procedures. Pls.' Opp. at 33. Whether the decision to deny licensure was appropriate goes to the substance of CFSA's decision, which plaintiffs could have appealed through the process outlined in CFSA's regulations providing a right to request a Fair Hearing to applicants denied foster home licensure. D.C. Mun. Regs. tit. 29, § 5901; *see also English v. District of Columbia*, 815 F. Supp. 2d 254, 267 (D.D.C. 2011) ("If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants.") (quoting *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)). Plaintiffs' dissatisfaction with the outcome of an agency decision does not give rise to a procedural due process claim.

Plaintiffs also fail to identify a valid liberty interest. As shown, the extensive discretion afforded to CFSA in the D.C. Child Abuse and Neglect Act is evident throughout the law. *See* D.C. Code §§ 4-1301.06(3)(E), 4-1301.09(b); 29 DCMR § 6001.1. State laws or regulations may give rise to a liberty interest "if they contain substantive limitations on official discretion, embodied in mandatory statutory or regulatory language." *Atherton v. District of Columbia*, 567 F.3d 672, 689 (D.C. Cir.

2009) (quoting *Price v. Barry*, 53 F.3d 369, 370 (D.C. Cir. 1995) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454 (1989)).

Plaintiffs have failed to identify that "unmistakeabl[y] mandatory" language in District law that may give rise to a liberty interest. *Hewitt v. Helms*, 459 U.S. 460, 471–72 (1983). Indeed, plaintiffs cite the D.C. Code in their opposition just twice, Pls.' Opp. at 35, but those references are to the HRA, not the D.C. Child Abuse and Neglect Act. Plaintiffs' use of the word "mandatory" was limited to their arguments concerning *federal* law.

And even if the Court concludes that children enjoy a liberty interest in familial integrity, though plaintiffs cite no law that suggests this is a settled question of law in this Circuit, plaintiffs' claim—that the *only* procedurally sufficient means of removing a child from a home is through a neglect petition in D.C. Superior Court— is meritless. Pls.' Opp. at 34. Plaintiffs argue that interactions with CFSA and custody hearings in D.C. Superior Court do not constitute adequate process, but only cite the fact that plaintiff caregivers were denied foster care licensure as "evidence" that the process is inadequate. Pls.' Opp. at 34. Once again, plaintiffs' complaint about the *outcome* of the process does not substitute the need for plaintiffs to identify some part of the *procedure* that is constitutionally deficient. As a result, plaintiffs fail to state a due process claim based on deprivation of a liberty interest.

## V.   Plaintiffs Fail To State an HRA Claim (Count IV).

Plaintiffs argue that CFSA intentionally treats caregiver relatives differently than licensed foster parents in violation of the HRA's prohibition of familial status

discrimination. Pls.' Opp. at 35. But plaintiffs' allegations are deficient in several ways. First, plaintiffs fail to allege *how* similarly situated individuals are treated differently. Second, plaintiffs do not establish the connection between plaintiffs' familial status and unfavorable treatment necessary to show "direct evidence of discriminatory intent" or "an inference of discrimination." *E.g., Boykin v. Gray*, 895 F. Supp. 2d 199, 208 (D.D.C. 2012).

Plaintiffs cannot demonstrate that they are treated differently than similarly situated individuals based on a protected characteristic of familial status because the group plaintiffs seek to show received *more* favorable treatment shares the *same* protected characteristic. Thus, plaintiffs' HRA claim rests on the dubious assertion that plaintiff caregivers, who have or seek legal custody of plaintiff children, "fall within the HRA's definition of familial status," while licensed foster care parents, who lack legal custody of the children placed in their care, do not.[16] Pls.' Opp. at 36. To reach this conclusion, plaintiffs adopt a narrow reading of the statute that contradicts their own assertions that the HRA should be broadly construed and "should not be interpreted as being limited to those aspects of discrimination specifically described in the text of the Act." *Id.* at 35 (internal quotation marks and citation omitted). Instead, plaintiffs read the statutory definition of protected familial status as limited

---

[16]     The HRA defines "familial status" as:  "[O]ne or more individuals under 18 years of age being domiciled with: (1) a parent or other person having legal custody of the individual; or (2) the designee, with written authorization of the parent, or other persons having legal custody of individuals under 18 years of age. The protection afforded against discrimination on the basis of familial status shall apply to any person who is pregnant or in the process of securing legal custody of any individual under 18 years of age." D.C. Code § 2-1401.02(11A).

to strict "legal custody" of children, though courts generally interpret the requirement to mean that minor children are present in the household. *Borum v. Brentwood Village, LLC*, 218 F. Supp. 3d 1, 22 (D.D.C. 2016) (citing cases). Plaintiffs' position would mean that foster parents would not have recourse under the HRA if, for example, a landlord refused to rent an apartment to them because they cared for a child in their custody. A more sensible reading of the HRA suggests that both foster parents and plaintiff caregivers enjoy the familial status protections based on the custody of children in their care rather than the strict definition of "legal custody." Because licensed foster families and plaintiffs share the same protected characteristic, plaintiffs fail to state a discrimination claim under the HRA. *See McNair v. District of Columbia*, 213 F. Supp. 3d 81, 87 (D.D.C. 2016) (holding plaintiff failed to support an inference of gender discrimination where her allegations "suggest[ed] that, at best, she was treated differently from all other employees—which presumably includes both men and women").

Plaintiffs also fail to allege facts sufficient to connect their familial status to CFSA's purported discriminatory treatment. Plaintiffs contend that "CFSA refuses to license as foster parents those relatives who are seeking or who obtain legal custody of diverted children." Pls.' Opp. at 36. But plaintiffs do not allege any facts to support this argument, and only state elsewhere, in conclusory fashion, that the District "deliberately prevented Plaintiffs from getting licensed as foster parents" Pls.' Opp. at 16. Moreover, even if plaintiffs rely on the denial of foster parent licensure as the District's discriminatory act, plaintiffs fail to compare the treatment

of their applications to other *applicants*, not licensed foster parents (who are differently situated). *See, e.g.*, *Laureys v. District of Columbia*, 2019 WL 4673492, at *6 (D.D.C. Sept. 25, 2019) ("Plaintiff's bare allegation that, on a single occasion, he was subjected to solitary confinement while three differently-situated African American inmates were not does not plausibly support the inference that the District discriminated against him based on his race"). Again, dissatisfaction with the outcome of a licensure decision, without any factual allegations about how plaintiffs' applications compared to other similarly situated applicants, are anecdotal, conclusory, and not sufficient to state a claim of disparate treatment, let alone a violation under the HRA. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (plaintiffs raising the "sheer possibility that a defendant has acted unlawfully" is not sufficient to survive a motion to dismiss).

**VI.**   **Plaintiffs Fail To State a Negligence Claim (Count V).**

To support their negligence claim, plaintiffs argue that the District had a duty of care, which arises out of the District's special relationship to abused and neglected children, and that the District breached that duty, which caused harm to plaintiffs' interests. Pls.' Opp. at 37. The District does not dispute that a special relationship exists between CFSA and abused and neglected children, but plaintiffs incorrectly identify the "statutorily-defined duties and responsibilities" imposed on the District as a result of the special relationship. Pls.' Opp. at 37. Plaintiffs' claim that the District's kinship diversion program runs afoul of the D.C. Child Abuse and Neglect

Act is incorrect for the reasons discussed above, *see* Section I, and therefore the District has not breached its duty to plaintiffs.

Similarly, plaintiffs' claim that the special relationship between the plaintiff children and the District somehow creates an economic obligation is the result of plaintiffs reading additional requirements into the law. Pls.' Opp. at 38. Contrary to plaintiffs' assertion, the mere existence of a special relationship does not impose an obligation to care for plaintiffs' economic well-being, as noted in the very cases plaintiffs cite. Pls.' Opp. at 38; *see also Aguilar v. RP MRP Washington Harbour, LLC*, 98 A.3d 979, 985 (D.C. 2014) (finding that property owners "have an obligation to provide a safe and secure working environment for everyone on the property ... but that obligation does not necessarily implicate appellants' economic expectancies."); *Whitt v. Am. Prop. Constr., P.C.*, 157 A.3d 196, 205 (D.C. 2017) (finding that economic loss doctrine only applies when there is an obligation to care for plaintiffs' economic well-being or "undertook obligations that would implicate [plaintiffs'] economic expectancies"). The D.C. Child Abuse and Neglect Act does not create an expectation that the District has an obligation to ensure plaintiffs' economic well-being, *see* Section I above, and plaintiffs cite nothing in the statute to suggest otherwise. *Cf. District of Columbia v. Harris*, 770 A.2d 82, 87 (D.C. 2001) ("[W]hen abused and neglected children have been individually identified to the government agency charged with their protection, then a duty, although narrow and specific, is created by statute to benefit the individually identified persons.") (emphasis added) (citing

*Turner*, 532 A.2d at 673). The District did not breach its narrow and specific duty here and plaintiffs fail to adequately plead a claim of negligence.

**VII.** **Plaintiffs Fail To State a Claim of Fraudulent Misrepresentation (Count VI).**

Plaintiffs contend that they sufficiently pled the four elements of fraudulent misrepresentation: "(1) a false representation or willful omission of a material fact; (2) knowledge of the falsity; (3) an intention to induce reliance; and (4) action taken in reliance on the representation." *Carter v. Bank of America, N.A.*, 888 F. Supp. 2d 1, 19 (D.D.C. 2012) (citation omitted); *see also Falconi-Sachs v. LPF Senate Square*, 142 A.3d 550, 555 (D.C. 2016) (citation omitted); *Econ. Research Servs., Inc. v. Resolution Econ.*, LLC, 2016 WL 5335666, (D.D.C. Sept. 21, 2016) (same). Not so.

Plaintiffs' argument fails because it relies on an incorrect reading of the requirements in the AACWA. *See* Section II above. Plaintiffs cite no authority and rely solely on the notion that the text of the statute is "plainly sufficient" to create a duty for CFSA to disclose the requirements for foster care licensure. Pls.' Opp. at 40. But simply stating it is insufficient. The statute (and specifically 42 U.S.C. § 671(a)(29)) requires a state to develop a plan to provide notice, but it does not require specific disclosures. Plaintiffs have not shown otherwise or cited any case law interpreting this provision; thus, plaintiffs cannot sustain a fraudulent misrepresentation claim. Additionally, plaintiffs merely state legal conclusions and fail to allege facts sufficient to adequately plead the remaining factors in compliance with Rule 9. Plaintiffs argue that the "required elements are plausibly pleaded." Pls.' Opp. at 42. And plaintiffs contend that "the fact that Plaintiffs 'generally' allege that

CFSA 'knowingly' omitted facts they had a duty to disclose[] satisfies the pleading standard." *Id.* at 41. However, plaintiff cannot state a claim by parroting the legal requirements without alleging supporting facts. *See De La Fuente v. DNC Services Corp.*, 2019 WL 1778948 at *10 (D.D.C. Aug. 2, 2019) (finding plaintiff's "conclusory allegations are simply not adequate under Rule 9(b)"); *Plummer v. Safeway, Inc.*, 934 F. Supp. 2d 191, 199 (D.D.C. 2013) (where plaintiff "asserts mere legal conclusions, rather than facts, he fails to state a claim for fraudulent misrepresentation").

## VIII.   Plaintiffs Fail To State a Claim of Negligent Misrepresentation (Count VII).

Finally, plaintiffs argue that CFSA's failure to disclose the requirement for foster care licensure adequately states a claim for negligent misrepresentation. Pls.' Opp. at 43. In doing so, plaintiffs primarily attempt to distinguish *Falconi-Sachs v. LPF Senate Square*, 142 A.3d 550 (D.C. 2016) from the instant case. Pls.' Opp. at 44. But the comparison is apt:  in *Falconi-Sachs* and here, the alleged misrepresentation at issue concerns matters of law, not facts, and therefore cannot adequately state a claim of negligent misrepresentation. *Falconi-Sachs,* 142 A. 3d at 555 (affirming dismissal where plaintiffs alleged that defendants "misrepresented the law" rather than the facts). Plaintiffs state that CFSA had the duty to disclose "options" but such options are based on *legal* requirements for licensure and, as a result, plaintiffs fail to state a negligent misrepresentation claim. Pls.' Opp. at 44; *see* Defs.' Mem. at 42.

## CONCLUSION

For the foregoing reasons, and reasons stated in the District's motion to dismiss, the Court should dismiss the Amended Complaint with prejudice.

Dated:  April 17, 2020.             Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Chief, Equity Section

*/s/ Andrew J. Saindon*
ANDREW SAINDON [456987]
Senior Assistant Attorney General
PAMELA DISNEY [1601225]
Assistant Attorney General
441 Fourth Street, N.W., Suite 630 South
Washington, D.C. 20001
(202) 724-6643
(202) 730-1470 (fax)
andy.saindon@dc.gov
pamela.disney@dc.gov

*Counsel for Defendants*