IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

M.H., et al.,
Plaintiffs,

vs.

DISTRICT OF COLUMBIA,
et al.,
Defendants.
______________________________/

Civil Action
No. 1:19-3124

Washington, DC
March 23, 2026

3:02 p.m.

TRANSCRIPT OF MOTION HEARING PROCEEDINGS
**BEFORE THE HONORABLE ANA C. REYES**
UNITED STATES DISTRICT JUDGE

APPEARANCES:

**For the Plaintiffs:** **Gregory Ketcham-Colwill**
**Matthew Robert Blecher**
**Amanda Catherine Pescovitz**
OFFICE OF THE ATTORNEY GENERAL
400 6th Street NW
Washington, DC 20001
Email: matthew.blecher@dc.gov
gregory.ketcham-colwill@dc.gov
amanda.pescovitz1@dc.gov

APPEARANCES CONT'D.:

**For the Defendants:**

**Natalia Mercado Violand**
**Brendan Kearney**
**Chimso Okoji**
ROPES & GRAY LLP
Pennsylvania Avenue, NW
Washington, DC 20006
natalia.mercadovioland@ropesgray.com

**Matt Corriel**
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
matt.corriel@ropesgray.com

**Stephanie Ridgway McClellan**
DC KINCARE ALLIANCE
1101 Connecticut Avenue, NW
Suite, 450
Washington, DC 20036
stephanie@dckincare.org

**Alexandria Westbrook**
Miller & Chevalier
900 16th Street NW
Washington, DC 20006
awestbrook@milchev.com

**Reported By:**

**Lorraine T. Herman, RPR, CRC**
Official Court Reporter
U.S. District & Bankruptcy Courts
333 Constitution Avenue NW
Washington, DC 20001
lorraine_herman@dcd.uscourts.gov

*** Proceedings recorded by stenotype shorthand; transcript produced by computer-aided transcription.

**P R O C E E D I N G S**

**DEPUTY CLERK:** Your Honor, this is civil action 19-3124, *K.H., et al vs. District of Columbia, et al.*

Would the parties please come forward and identify themselves for the record, beginning with plaintiffs' counsel.

**MS. VIOLAND:** Good afternoon, Your Honor. Natalia Mercado Violand for plaintiffs.

**THE COURT:** Nice to see you again.

**MS. VIOLAND:** Nice to see you.

**MR. COWILL:** Good afternoon, Your Honor. Gregory Ketcham-Colwill for the District. With me is Matt Blecher and Amanda Pescovitz.

**THE COURT:** Good morning, everyone.

All right. So I got the brief. I kind of feel badly someone spent so much time on the brief. In the future, if you have things like this you can email chambers. If I feel like I need briefing, I can let you-all know. I don't want you to do needless work.

As I understand it, Ms. Greene is talking about or is proposed to testify about her observations at the relevant agency. But I thought that we were doing standing first. Aren't we doing standing, a standing hearing? So why is Ms. Greene relevant to standing?

**MS. VIOLAND:** Certainly, Your Honor.

It's our understanding at the December 17th hearing the Court identified the issue of predictability as to whether once CFSA enters clinical judgment for removal, whether it is predictable that OAG will prosecute the case and that the family court will order removal. So in order to --

**THE COURT:** Is that relevant to standing?

**MS. VIOLAND:** Yes. It goes to traceability, Your Honor.

**THE COURT:** Okay.

**MS. VIOLAND:** So in effort to show evidence of traceability and causation, we looked through various avenues in order to have evidence before Your Honor to consider at the evidentiary hearing, and in those efforts we spoke to Ms. Greene to see if she would have relevant testimony to prove this causal chain and we found that she did.

**THE COURT:** Okay. Well, why was it -- why was she disclosed? I mean, she was disclosed relatively late if it was just February of this year. Right?

**MS. VIOLAND:** Yes, Your Honor.

So it was precisely in response to Your Honor's question and to bolster our argument on traceability that we went and talked to Ms. Greene to see if she could talk about her experience being at CFSA for nine years and seeing

whether she saw this causal chain in her experience.

And once we realized that she did and could talk about those issues, along with the likelihood of licensure and the practice of waiving licensure requirements, as well as the implementation and follow-through of the narrowing the front-door policy, we promptly notified defendants that we were thinking of adding her to the witness list.

And then as soon as we made the decision we would call her at the evidentiary hearing, we told defendants that we would do so. We disclosed Ms. Greene as a witness at the end of February, Your Honor, and we put her on the witness list on March 2nd.

Since then, I would note for the Court that defendants haven't made efforts to depose her or get discovery from her, even though Ms. Greene has made herself available to be deposed at any point, except for two days, which have already passed.

**THE COURT:** Okay.

Now, I guess, defendants would say, Well, we haven't asked for discovery on her because discovery is closed. Is that what you're going to tell me?

**MR. COWILL:** Yes.

**THE COURT:** And, also, what they will say is -- you can be seated. What, also, that they will say is that it's not fair for them to have to take time away from

preparing for a hearing to depose an individual.

Unfortunately for you-all, I had to do a trial where we literally had to depose people in the afternoon and cross-examine them within 24 hours. So it's not going to be much -- it's not going to sway me very much, the fact that you'll have to do some extra work.

However, I have what may be good news or bad news or indifferent news, which may solve some of this, which is I have a case that was scheduled to go to trial next Monday that now probably will not begin until April 9th. And if it goes, it will certainly not be done by the 13th. It might not even be done, I don't think, within a couple weeks.

Now, I am still very hopeful that it will not go and that it will settle, but there is some chance that it will go, in which case, obviously, we are going to have to push this back.

So one of the things I wanted to discuss with you-all was my preference would be to keep this on the April 13th calendar, so that we can go if the case settles. But I understand that if you're dealing with people's schedules and whatnot, that that can be difficult to ask them to hold time and then have to cancel at the last minute, 'cause I might not know until the 9th whether we will go forward.

One option is -- unfortunately, my schedule is

kind of a mess. Do I have a trial starting April 29th -- April 20th?

**DEPUTY CLERK:** Yes.

**THE COURT:** What do I have? I have *Terrion*?

**DEPUTY CLERK:** Yes.

**THE COURT:** What about the 27th?

How long are you guys expecting this evidentiary hearing to last?

**MS. VIOLAND:** We expect five days, Your Honor.

**THE COURT:** Five days.

So here's what we can do. We could just -- I guess what I'd prefer to do is keep the April 13th date and have the April 20th week as a backup. But if that's going to make you-all crazy, we could just go ahead and move the date. I think the case is going to settle, but I'm not as positive as I wish I were.

So one thing we could do is just keep the date. I'll let you guys have a deposition of Ms. Greene and you guys just do what you will, but if you want to argue it, you can. Or if we move the date, we can just move the date to the 20th and, definitely at that point, I will let them put up Ms. Greene and if you-all want to depose her, that's fine.

Do you want to be heard?

**MR. COWILL:** Thanks, Your Honor.

I hear what Your Honor is saying. We can have the chance to depose and we could move it back, so it's not as much of a time crunch. I still think our Rule 37 argument is a winning one. Their late disclosure is not substantially justified and it's not harmless. We will have to depose her.

Rule 37 is a self-executing sanction, and I think it is -- exclusion is warranted here. Rule 37 also allows the Court to issue other sanctions, but I think Rule 37 does clearly say in these circumstances there should be some sort of evidentiary sanction against the plaintiffs.

**THE COURT:** All right. Well, they can -- I don't know, they can pay for the deposition. They can pay for your time or pay for the transcript or the court reporter or whatever sanctioned.

**MR. COWILL:** And as you saw, we do have two grounds for this motion or, actually, it's a combined motion Rule 37 and a motion in limine. We don't think her testimony is relevant because she left CFSA's employ in May of 2017, which is almost a year and a half before the earliest alleged diversion in this case.

So she doesn't have relevant personal knowledge of any one plaintiff's situation and she doesn't have relevant personal knowledge of CFSA's policies and practices, as they existed in writing or in operation when the events at issue

in this case took place.

**THE COURT:** Look, if this was a jury trial, if we were at the jury trial phase, I would probably be paying a lot closer attention. I probably would even consider more carefully whether or not to exclude her. But since what we're dealing with right now is just a standard evidentiary hearing, and my goal on these things is to get it right, I want to have more information, rather than less. I can adjudge whether it's relevant or not.

Yes, there will be a two-year gap and I'm sure you will point that out, but it is a building block. Right? A case is always a building block of issues and so I'm not going to exclude it. I mean, if it was five years, ten years, maybe I would think, yeah, it's not worth anyone's time. We were talking two years.

How long was she there? She was there for a few years. Right?

**MS. VIOLAND:** Nine years, Your Honor.

**THE COURT:** About nine years?

**MS. VIOLAND:** Yes, Your Honor.

**THE COURT:** Okay. So...

**MR. COWILL:** So I guess this sort of merges, then, with --

**THE COURT:** I'm not saying -- look, if we get to a jury trial, it may be that -- wait. I forget, did we do a

jury trial on this or no?

**MR. COWILL:** I believe plaintiffs did request a jury trial.

**MS. VIOLAND:** [Nodded]

**THE COURT:** Look, I'm not going to say that you can't raise the issue of a motion in limine when we get to the jury trial. I guess if I deny your motion, I will deny it without prejudice. You can do that.

I don't know. When it comes to an evidentiary hearing, I'm just not that worked up about it. If you want to limit the deposition because of the time crunch, I'll let you have another chance at her, if you want a fuller one before jury trial.

**MR. COWILL:** Okay.

I also just want to point out plaintiffs have offered three -- their witness list lists three topics in their description of Ms. Greene's testimony or proposed testimony.

One of them is, basically, the allegations in plaintiffs' complaint and the policy of kinship diversion, you know, what the case is about. But we don't think that is a standing issue and we've explained that to plaintiffs.

We had a meet-and-confer with them last week about what issues will be in dispute at this upcoming standing hearing, and we don't think the existence of the policy, the

contours of the policy is at issue. We think the standing issues are much narrower.

**THE COURT:** Can I ask you a question?

**MR. COWILL:** Yeah.

**THE COURT:** Just as a litigation tactic, why wouldn't you want to cross-examine her on everything you could? I mean, you get a free shot at her on cross-examination in front of a judge before a jury. Not only can you trip her up at her deposition, you can see if you can trip her up here, and then you have two times that you can potentially use to trip her up in front of a jury.

I understand if we were in front of a jury why you might want to limit her testimony, but you are talking to me like I'm not going -- I'm going to know what's relevant and what's not relevant. It just seems like if I were you, I'd be, like, call her up. Call anybody up that you want.

**MR. COWILL:** I guess our view, Your Honor, is this case can be resolved quickly on the merits, once we get there, but we have to get through the standing hearing. And she doesn't have testimony relevant to standing or, if she does, it's narrow --

**THE COURT:** Okay. I'm not --

**MR. COWILL:** -- and not worth going through.

**THE COURT:** I'm not going to exclude her on relevance and I'm not going to tie them up as to what they

want to talk about. It's just not worth it.

Frankly, I never quite understand why people make these arguments with respect to court issues because all you're doing is sort of focusing me on this human being, which now I will be more focused on than I otherwise would be.

I'm not saying you're wrong to move. I'm just saying from a litigation tactic perspective, you might -- I know that you don't want her to testify. I understand why you don't want her to testify but I'm going to let her testify. I might just, you know, see what the best option is going forward.

**MR. COWILL:** We don't want her to testify because she doesn't have information that's going to help resolve this case one way or the other.

**THE COURT:** Well, I understand that. So you're here for a little bit more time than you otherwise would be here. I'm here for a little more time than I otherwise would be here. And if I determine, at the end of the day, that it was a total waste of time, I will be the first to say that you were right and I was wrong.

**THE COURT:** Well, I --

**THE COURT:** If we were in front of a jury, we would be having a far different conversation. I'm not -- if we were in front of a jury, you know -- again, I'll dismiss

this without prejudice. If you want to, you know, say that she's not limited -- if I find standing and we are in front of a jury and you think that she shouldn't testify, I will be far more engaged in what can and can't come out. I totally understand that, if we are in front of a jury. But you are in front of me and, you know, what do I care.

**MR. COWILL:** Okay. I see which way the wind is blowing, Your Honor.

So I would like to raise an issue that the parties have been having in the course of -- outside of Ms. Greene and in the course of preparing for this evidentiary hearing, but which still goes to Ms. Greene and what she will testify to at the evidentiary hearing, which is, we haven't been able to come to an agreement on what standing issues are in dispute.

**THE COURT:** Fine.

**MR. COWILL:** So that's key.

**THE COURT:** Will someone just give me brief -- pretend the following. Pretend that I have been non-stop busy on things other than this case.

**MR. COWILL:** Noted.

**THE COURT:** I've been so non-stop busy on things other than this case; that I saw that you-all filed a motion and I thought to myself, I don't want to deal with a motion, so let's just call everyone up on Monday; and that for about

10 minutes I read your motion when it came in; that my clerk has looked at your motion; and that I refreshed my recollection on your motion about 10 minutes before I walked in here and that is the extent of my knowledge about this case right now.

I know what the case is about and I know that we have a standing hearing.

**MR. COWILL:** Yes.

**THE COURT:** Remind me what you think the standing issues are, and I will ask them to remind me what they think the standing issues are, and then we'll just resolve today what we're going to do going forward.

**MR. COWILL:** Sure.

So, in a nutshell, we think the standing issues in dispute are fewer and more narrow than the issues that plaintiffs listed in their draft proposed joint pre-hearing statement.

**THE COURT:** Okay.

**MR. COWILL:** So we -- their list includes, sort of, more or less, every element of standing on each claim. Ours are just the issues that we are disputing. We have never -- you know, summary judgment stage --

**THE COURT:** Well, give me an example.

**MR. COWILL:** This issue that Ms. Greene is to testify to, whether OAG would have prosecuted a neglect case

if CFSA had removed the child. We are not disputing that as to all but two caregivers; and that is reflected in the --

**THE COURT:** But I should treat it as to two caregivers.

**MR. COWILL:** But those two caregivers, OAG did not petition the case, so the standing issue there is specific to the facts of their case, which is not something that Ms. Greene has personal relevant knowledge of.

As to the caregivers, who have children that were never removed, we are not planning to dispute at the hearing that, for example, if a child was -- if CFSA did not file a neglect complaint for a child in order to remove them, then OAG wouldn't prosecute that case, because you need the complaint to start the case. The one leads to the other.

We have proposed stipulations to that effect to plaintiffs to make it clear --

**THE COURT:** So what's the issue, guys, that they're not -- well, someone come up and let's do this all at once. You stay up.

**MS. VIOLAND:** Your Honor, the reason why the scope has been in dispute is it's kind of been a moving target with the District, but they're not issues that we think are not beyond solving, specifically at our next meet-and-confer this coming Friday.

But one of the issues is that they appear to

concede, for example, on standing with regard to notice for three plaintiffs but not the children. They also don't concede on standing on any of the remedies on the economic hardships.

So because all of the testimony is, kind of, intertwined, if you are not going to concede to whether a plaintiff child has standing, you have to call the plaintiff caregiver; you have to call the social worker.

So in order to be able to narrow the issues and scope of what the evidentiary hearing will look like, we need to come to an agreement on what we're talking about.

In relation to the stipulations that the District has raised, they concede an issue and try to narrow an issue, but then they won't stipulate to the facts that correspond with that issue. So we're working in order to get agreement on what the stipulations will be and the issues will be.

I don't think that it's beyond, you know, what we plan to confer on Friday.

**THE COURT:** So is there something that you think that you're not going to be able to resolve? Why do I need to do this right now?

**MR. COWILL:** It ties into Ms. Greene's testimony. For purposes of, specifically, Ms. Greene, we think that it's not necessary even if, ultimately, the Court finds they

have standing and we go on to the merits and a merits trial is necessary, then I understand Your Honor would expect us to depose her. We would.

**THE COURT:** You can depose her now, if you want. I'm not stopping you. You can depose her twice or eight times. I don't care.

**MR. COWILL:** We think she doesn't have information relevant to the standing issues, and we would rather focus on the issues, prepare for the standing hearing that is coming and then dispose Ms. Greene, if necessary.

**THE COURT:** Look, the problem that you're going to have is that --

You have the burden of proof on standing. Right?

**MS. VIOLAND:** Yes, Your Honor.

**THE COURT:** I'm not going to clip their wings on standing. I'm not going to clip their wings on scope, because you guys are the ones challenging it. They have got to put on whatever proof they think they have to put on in order to convince me that they met their burden. And I don't think it's fair to force them to, sort of, say less than they think they need to say in order to show standing.

Now, did I ask you guys at some point to create some sort of graph or something about -- I did. Right?

**MS. VIOLAND:** [Nodded]

**THE COURT:** Has that gone anywhere? It seems like

if you had that graph, you could just say, the government stipulates X -- whatever dots on the graph. Then that way you guys know what you have to prove.

But they're right. It may be that if -- just because you say, well, we don't -- we stipulate as to X woman, doesn't mean that they don't have to bring her to testify if you're not stipulating to the child. Does that make any sense?

**MR. COWILL:** I'm not sure I follow.

**THE COURT:** I don't think you were here for this. Do you know what chart I'm talking about?

**MR. COWILL:** I'm not entirely sure but I think I understand the concept.

**THE COURT:** I just want, for each claim or for each individual, I wanted to know if there was a standing --

**MR. COWILL:** The charts we submitted at summary judgment?

**MS. VIOLAND:** Yes.

**THE COURT:** Yes.

**MR. COWILL:** Yes.

Right, we can certainly go through those with plaintiffs. I'm glad to hear that they think these issues about what issues are in dispute are resolvable but --

**THE COURT:** Look, if you guys get through Friday and -- you're meet and conferring on Friday?

**MS. VIOLAND:** Yes.

**THE COURT:** Well, thank you.

If you get through that and you have issues, just let us know and I'll see you guys on Monday. I've got some people in for some stuff, but that's in front of me, not the jury, and I can work you guys in. All right? That way I'll get it handled on Friday -- on Monday.

I was mistaken. The *Terrion* trial, if it goes, is supposed to be two weeks. So we would have to do ours the week of the 27th. Again, I would far prefer keeping April 13th as the date, in case they settle, but I don't want to screw you guys up.

I will let you guys go talk to your clients, go talk to whomever, go talk to each other, and you guys can tell me whether you want to just stay on the 13th, so that we move forward there if we can, or if you want to push it to the 27th.

Does that all make sense?

**MR. COWILL:** Yes, Your Honor.

I think we are probably -- the District is probably likely to favor pushing it at this point, since we're three weeks out and we don't know the issues in dispute. But we will let you know.

**THE COURT:** Hopefully, if we do -- not three weeks out. Two weeks out, to the 27th. Pushing it --

**MR. COWILL:** Yes, the evidentiary hearing.

**THE COURT:** The good news for Ms. Kelley is if you push it, hopefully she'll be more relaxed on her cruise.

I will sanction. I will order plaintiffs to pay the counsel for the deposition.

**MR. COWILL:** The other thing I would suggest, Your Honor, is perhaps limit the scope to her time at CFSA, which was 2017. If we don't know what is in play with respect to Ms. Greene, then that's, you know -- she started working at CFSA in 2009. Are we going to question her about everything that's happened, her opinions about what CFSA is doing these days, to the extent she knows what CFSA --

**THE COURT:** If she can. She can't offer opinions. All she can do is testify as to personal knowledge, as to what her time was at the office. Anything she says after that will be hearsay.

**MR. COWILL:** Right.

**THE COURT:** I think it's just naturally going to be limited.

Is there anything that you need from her after 2017 that you're --

**MS. VIOLAND:** I don't believe so, Your Honor. I think what counsel is getting at is that Ms. Greene has filed a, sort of, wrongful termination lawsuit against CFSA for allegedly terminating her once she was a whistleblower,

seeing that they were --

**THE COURT:** I'm not going to get into any of that on the standing.

**MS. VIOLAND:** -- which is why they want to limit her testimony.

**THE COURT:** You guys can have a fight about that before we get to a jury, if she testifies in front of a jury. But I don't care about any of that. All right?

**MS. VIOLAND:** Yes, Your Honor.

**MR. COWILL:** We're not concerned with that lawsuit. It's just she continues to be an advocate in this space and she might learn things that --

**THE COURT:** She is going to be limited to her personal knowledge while she was there. Okay?

**MS. VIOLAND:** Absolutely, Your Honor.

**MR. COWILL:** The other thing I will state while we're here is the third topic that plaintiffs have noticed her for, which is a standing issue, is licensure. She never worked in licensing during her time at CFSA. So we think she does not have relevant person knowledge about licensing.

**THE COURT:** What is her relevant personal knowledge about licensing?

**MS. VIOLAND:** She was at CFSA for nearly a decade. She was a social worker for most of it, but she was also an ombudsperson. We would say that she should testify to

personal knowledge while she was there. If that includes licensure waivers and, as a social worker, seeing that certain caregivers could have certain requirements waived, that goes directly to some of the plaintiffs' issues that they're unwilling to concede on.

We would want her to testify --

**THE COURT:** Got it.

I'm not going to pre-exclude testimony. Obviously, you can object during the testimony. And if I find that it's based on hearsay as opposed to her personal knowledge, then I will sustain the objection. Okay?

**MR. COWILL:** Okay. Thanks, Your Honor.

**THE COURT:** Look, if she starts testifying and I, you know, find that we're nowhere near where I think we need to be with respect to standing, I'll cut it off. I'm very good about moving people along in jury trials. I'm even better in bench trials. All right? So I will move us along if I feel like we are in fields that we don't need.

**MR. COWILL:** And just on that note, Your Honor, the first notice topic, which is basically CFSA's policies and practices, which seemingly could cover anything and everything in this case, we don't think is a standing issue. So you just want to be clear about that.

Ms. Kelley sent the Court an email after our summary judgment hearing explaining how, after reading

plaintiffs opposition to summary judgment, we realized that their notice argument is intertwined with the merits and the D.C. Circuit in cases like *Haaland-Brown*, the Supreme Court in *FEC-Cruz* say where the issues are intertwined, the Court assumes those issues, because the Court assumes that plaintiffs' theory on the merits is correct when it decides standing. So where they intertwine, it basically assumes both.

**THE COURT:** Okay.

**MR. COWILL:** So that, sort of, topic, as plaintiffs have noticed it, kind of a can of worms and we just don't think any of it is relevant to standing. It should be disputed at the hearing.

**THE COURT:** Okay. I'm not -- okay.

**MR. COWILL:** That is their notice claim.

**MS. VIOLAND:** Your Honor, as I've said, it's kind of a moving target what we've received from the District.

**THE COURT:** Okay. Guys. We are done. You guys meet and confer on Friday. If you have fights after Friday about what's in the scope, we will all get together on Monday and we will figure it out.

And if we get together on Monday, I want some chart in front of me that tells me what you think is in and what you-all think is in, so I'm not just trying to keep it all in my head because my head is not particularly big.

Okay?

**MR. COWILL:** Okay.

**MS. VIOLAND:** Yes, Your Honor.

**THE COURT:** Anything else?

**MS. VIOLAND:** No, Your Honor.

**THE COURT:** Make Ms. Greene available whenever they need her, except for whatever date has passed.

Tell me whether you guys want -- or can keep the 13th as a backup. If not, we're going to the 27th. All right?

**MR. COWILL:** Okay. Thank you, Your Honor.

**THE COURT:** All right. Thank you.

(Proceedings concluded at 3:27 p.m.)

**C E R T I F I C A T E**

I, **Lorraine T. Herman, Official Court Reporter,** certify that the foregoing is a true and correct transcript of the record of proceedings in the above-entitled matter.

March 25, 2026
**DATE**

/s/ Lorraine T. Herman
**REPORTED BY**