**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | **)** | |
| **K.H.,** *et al.***,** | **)** | |
| | **)** | |
| **Plaintiffs,** | **)** | **Civil Action Nos. 1:19-cv-03124-ACR** |
| | **)** | **1:20-cv-00753-ACR** |
| **v.** | **)** | **1:21-cv-00512-ACR** |
| | **)** | **1:21-cv-00663-ACR** |
| | **)** | **1:21-cv-00670-ACR** |
| **THE DISTRICT OF COLUMBIA,** | **)** | **1:21-cv-00671-ACR** |
| *et al.***,** | **)** | **1:24-cv-02206-ACR** |
| | **)** | **1:24-cv-02207-ACR** |
| | **)** | |
| | **)** | |
| **Defendants.** | **)** | |

**SUPPLEMENTAL BRIEFING REGARDING PLAINTIFF CHILDREN'S STANDING
TO PURSUE DAMAGES FOR UNPAID FOSTER CARE MAINTENANCE PAYMENTS**

We write pursuant to the Court's direction at the December 17, 2025, summary judgment hearing in the above-captioned action regarding the Plaintiff Children's standing to pursue damages for unpaid foster care maintenance payments ("FCMPs"). At the hearing, the Court confirmed that there is "no dispute that foster care maintenance payments are paid to caregivers." Tr. 110:3-4, attached hereto as Exhibit 1. The Court also stated that Plaintiffs "are going to have to provide something as to why [they] believe" the Plaintiff Children have standing to pursue damages for unpaid FCMPs, and that Plaintiffs should preview arguments on this point to Defendants. *See* Tr. 110:10-15. Pursuant to this guidance, Plaintiffs respectfully submit this supplemental brief to the Court with the express hope that a ruling on whether the Plaintiff Children have standing to pursue FCMPs as a matter of law may narrow the scope of issues presented at, and the duration of, the upcoming evidentiary hearing. Also pursuant to the Court's guidance,

1

Plaintiffs have notified Defendants of their intention to submit this supplemental brief, and Plaintiffs understand that Defendants may submit a responsive brief.

When Defendants remove children from their parents and place them with kin caregivers, federal and District law obligate Defendants to provide those caregivers with FCMPs on behalf of the children in their care.[1] 42 U.S.C. § 672(a); D.C. Code § 4-217.01. Defendants' failure to meet that obligation constitutes an injury not only to the Plaintiff Caregivers in this case, as Defendants have conceded, but also to the Plaintiff Children. Federal law and Defendants' own policies firmly establish that, when FCMPs are wrongfully denied, it is the children who suffer an injury, no less than their caregivers.

FCMPs are monthly, tax-free stipends provided to foster parents to cover the daily living expenses of a child in foster care. Under federal law, a "qualified foster care payment" is "any payment made pursuant to a foster care program of a State… which is paid to the foster care provider *for caring for a qualified foster individual* in the foster care provider's home." *See* 26 U.S.C. § 131(a) (emphasis added). "Foster care payments… are intended to provide economic benefits *only* for the foster children, but not the foster parent," and, accordingly, foster care payments "are received by the foster parent acting in a fiduciary capacity." *Bryant v. Bryant*, 218 S.W.3d 565, 569 (Mo. Ct. App. 2007) (emphasis added); *see Cassie M. ex rel. Irons v. Chafee*, 16 F. Supp. 3d 33, 80 (D.R.I. 2014), *vacated on other grounds sub nom. Danny B. ex rel. Elliott v. Raimondo*, 784 F.3d 825 (1st Cir. 2015) (holding that plaintiff children had standing to "proceed with their claims to timely written case plans and adequate foster care maintenance payments").

---

[1] The term "foster care maintenance payments" is defined by federal law to mean "payments to cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, reasonable travel to the child's home for visitation, and reasonable travel for the child to remain in the school in which the child is enrolled at the time of placement." 42 U.S.C. § 675(4)(A).

Because FCMPs are intended to benefit the foster child and not the foster parent, they are "considered income to the child and not to the [foster] parent." *In re Marriage of Dunkle*, 194 P.3d 462, 465 (Colo. Ct. App. 2008); *see Murray v. Lyng*, 854 F.2d 303, 306 (8th Cir. 1988) ("[E]ven though the [FCMP] money is paid directly to the foster family . . . that money still constitutes the income and resources of the foster child.") (cleaned up). Congress has codified this principle in the Internal Revenue Code, providing that "[g]ross income shall not include amounts received by a foster care provider during the taxable year as qualified foster care payments." 26 U.S.C. § 131(a). The Internal Revenue Service has also recognized this principle in multiple agency materials. *See* IRS Publication 17 (2024) Catalog No. 10311G ("Generally, payment you receive . . . for caring for a qualified foster individual is excluded from your income"); IRS Publication 525 (2025) Catalog No. 15047D (same); *see also* Social Security Administration Program Operations Manual System (POMS), SI 00830.410(C)(1)(a) ("Foster care payments made under Title IV-E . . . are considered income based on need (IBON) to the individual in care."); *Hamblen v. Hamblen*, 203 Ariz. 342, 345 (Ct. App. 2002) ("If the subsidies are like those funds used to care for children in foster care, the funds should follow the children and be considered their money. In other words, if the money follows the children because it is for their benefit, it does not belong to the parents."). These provisions underscore that the deprivation of FCMPs is an injury to the foster child, not merely the caregiver who receives them on the child's behalf.

CFSA's own policies and guidance confirm that FCMPs belong to the children. FCMP amounts are calculated based on CFSA's assessment of the *child's* needs, not on an assessment of the foster parent's income, means, or ability to provide. *See, e.g.*, D.C. Child & Family Servs. Agency, *Policy on Relationship with Resource Parents, Procedure F: Payments* (latest revision, May 31, 2011), *available at* https://cfsa.dc.gov/sites/default/files/dc/sites/cfsa/publication

3

/attachments/Program%20-%20Relationship%20with%20Resource%20Parents%20(final)(H).pdf ("CFSA shall determine and provide foster care payments sufficient to cover the costs of room and board for each CFSA child living in the resource home . . . [and] shall be responsible for ensuring that foster care payments are distributed to resource parents in a reliable and timely fashion such that the ongoing and quality care expected for all children currently placed in a resource home is not interrupted."); *see also* D.C. Child & Family Servs. Agency, *Resource Parent Handbook* 96 (Oct. 2018), *available at* https://cfsa.dc.gov/sites/default/files/dc/sites/cfsa/page_content/attachments/Resource_Parent_Handbook_2018_FINAL_online.pdf ("[F]oster care payments are not considered [caregivers'] income.").

None of Defendants' authorities contradict this well-established principle. *See* Defs.' MSJ Br., ECF No. 113, at 34. Rather, those cases stand for the proposition that foster parents have an individually enforceable right to FCMPs. *See N.Y. State Citizens' Coal. for Child. v. Poole*, 922 F.3d 69, 81 (2d Cir. 2019) (stating that the Child Welfare Act is aimed directly at the needs of individual foster children, and, to meet those needs, it grants a monetary entitlement to those children's foster parents); *D.O. v. Glisson*, 847 F.3d 374, 378 (6th Cir. 2017) (similar); *Calif. State Foster Parent Ass'n v. Wagner*, 624 F.3d 974, 980 (9th Cir. 2010) (similar). None of these cases purports to displace the child as the statutory beneficiary, nor do they hold that a foster child lacks standing to seek redress for the nonpayment of FCMPs meant for their benefit. Rather, they establish the undisputed point that fiduciary caregivers, as the designated payees, may pursue relief for unpaid FCMPs. *See Fam. Fed'n for World Peace v. Hyun Jin Moon*, 129 A.3d 234, 244-245 (D.C. 2015) (holding that both plaintiff trustees and plaintiff beneficiaries had standing to enforce the terms of a charitable trust).

4

Because federal law and Defendants' own policies recognize that FCMPs are for the benefit, and constitute the income, of the children, Defendants' failure to make those payments was an injury suffered by the Plaintiff Children, no less than the Plaintiff Caregivers, traceable to Defendants' misconduct, and redressable by the Court. Accordingly, the Plaintiff Children have standing to pursue their claims for unpaid FCMPs.[2]

Dated: April 17, 2026                                      Respectfully submitted,

                                                          */s/ Matt Corriel*
                                                          Matt Corriel (N.Y. Bar No. 5219670)
                                                          *Admitted to D.D.C. (BAR ID NY0599)*
                                                          ROPES & GRAY LLP
                                                          1211 Avenue of the Americas
                                                          New York, NY 10036
                                                          Telephone: (212) 596-9000
                                                          Facsimile: (212) 596-9090
                                                          matt.corriel@ropesgray.com

                                                          Chong Park (D.C. Bar # 463050)
                                                          Samantha Badlam (D.C. Bar # 977190)
                                                          Chimso Okoji (D.C. Bar # 242066)
                                                          Rebecca H. Williams (D.C. Bar # 229868)
                                                          Brendan M. Kearney (D.C. Bar # 1619200)
                                                          K'sean Henderson (D.C. Bar # 1617638)
                                                          Natalia Mercado Violand (D.C. Bar # 90016039)
                                                          Rebecca A. Michelson (D.C. Bar # 1736332)
                                                          ROPES & GRAY LLP
                                                          2099 Pennsylvania Ave NW
                                                          Washington, DC 20006
                                                          Telephone: (202) 508-4600
                                                          Facsimile: (202) 508-4650

---

[2] For the same reasons, the Plaintiff Children have standing to pursue relief for the case plans they would have received under 42 U.S.C. § 671 but for CFSA's misconduct. Indeed, courts have regularly held that children have standing to bring such claims on their own behalf. *See Henry A. v. Wilden*, 678 F.3d 991, 1007 (9th Cir. 2012) (holding plaintiff foster children had enforceable rights to case plans under § 671); *Barricelli v. City of New York*, 2016 WL 4750178, at *5 (S.D.N.Y. 2016) (holding that plaintiff foster children had rights to case plans); *Kenny A. ex rel. Winn v. Perdue*, 218 F.R.D. 277 (N.D. Ga. 2003) (same).

chong.park@ropesgray.com
samantha.badlam@ropesgray.com
chimso.okoji@ropesgray.com
rebecca.williams@ropesgray.com
brendan.kearney@ropesgray.com
ksean.henderson@ropesgray.com
natalia.mercadovioland@ropesgray.com
rebecca.michelson@ropesgray.com

*Counsel for Plaintiffs K.H., K.J., M.M., L.E., L.C.,
T.C., N.G., S.S., A.B., N.B., T.J., T.S., D.B., B.B.,
M.S., M.D.A., Y.A.L., J.M.L, J.R., and T.A.*

/s/ Alexandria Westbrook
Alexandria Westbrook (D.C. Bar # 90023662)
Elissa B. Harwood (D.C. Bar # 90028059)
**MILLER & CHEVALIER CHARTERED**
900 16th Street, NW
Washington, D.C. 20006
Tel:    (202) 626-5800
Fax:    (202) 626-5801
awestbrook@milchev.com
eharwood@milchev.com

*Counsel for Plaintiff S.K., Individually and on
behalf of C.G.1, C.G.2, and C.G.3*

Marla Spindel (D.C. Bar # 443306)
Stephanie McClellan (D.C. Bar # 485658)
DC KinCare Alliance
1101 Connecticut Avenue, NW, Suite 450
Washington, DC 20006
marla@dckincare.org
stephanie@dckincare.org

*Counsel for Plaintiffs*

6

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2026, a true copy of the foregoing motion was electronically filed with the Clerk of Court using the CM/ECF system, which provides notice to all counsel of record.

By: */s/ Matt Corriel*
Matt Corriel
Counsel for Plaintiffs

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

K.H., et al.,                    ) CIVIL NO.:
                                 ) 19-3124-ACR
        Plaintiff,               )
    vs.                          )
                                 )
DISTRICT OF COLUMBIA,            )
                                 ) December 17, 2025
        Defendant.               ) Washington, D.C.
_____  ) 1:30 p.m.

                Transcript of Motions Hearing
              Before the Honorable Ana C. Reyes
                 United States District Judge

APPEARANCES:

For the Plaintiff:  Chimso Okoji, Esquire
                    Matthew J. Corriel, Esquire
                    Natalia Mercado Violand, Esquire
                    Ropes & Gray LLP
                    2099 Pennsylvania Ave NW
                    Washington D.C., DC 20006

For Plaintiff S.K.: Alexandria M. Oberman, Esquire
                    Miller & Chevalier Chartered
                    900 16th Street, NW
                    Washington, DC 20006

For the Defendant:  Mateya Beth Kelley, Esquire
                    Gregory Ketcham-Colwill, Esquire
                    Amanda C. Pescovitz, Esquire
                    Office of the Attorney General
                    for the District of Columbia
                    400 Sixth Street, NW
                    Suite 10100
                    Washington, DC 20001-2703

Reported by:   Christine T. Asif, RPR, FCRR
               Federal Official Court Reporter
               333 Constitution Avenue, NW
               Washington, D.C. 20001
               (202) 354-3247

Proceedings recorded by machine shorthand; transcript produced
by computer-aided transcription

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

certain of the plaintiffs can't show that they would have applied for licensing. I thought, based on what I read, that the plaintiffs at least said enough to make that a factual issue for the ones that you suggested, S.S., M.S., N.G. D.B., and Y.A.L.

I do think the plaintiffs are going to have to deal with, you know, short of fortifying or convincing me, that it could have been predicted that OAG would have brought a case and that the family court would have certainly granted the removal. If you think that that's part of standing, or if you don't think that's part of standing that you have to show that, you're going to need to express to me how or why.

I do agree with the plaintiffs that they don't have to show certainty that something will happen but that it be predictable. And so however you want to show me predictability, but it's going to have to be more, you know, than a lawyer saying so. You're going to have to show me something.

I do think that you guys are going to have to think about what to do about Texas and Pennsylvania. I think Ms. Kelley had some good points there.

Oh, I do have here -- and maybe this is what Ms. Kelley was getting at. You have an argument at page 26 of your opposition with respect to foster care payments and redressability. Let me see if I can pull that up, because

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

that one I actually didn't understand.

So -- oh, I guess -- I guess this is -- I guess I understand it now. There is no dispute that foster care maintenance payments are paid to caregivers; right. But that fact alone would not cause a reasonable jury to conclude that plaintiff children lack standing to seek damages for payments that would have provided them with support for their needs.

Yeah, okay, so I think -- I didn't understand it at the time but now, after arguments, I do understand it. There's no citation to any of that, it's just a sentence. So you guys are going to have to provide something as to why you believe that to be the case. And in fairness to Ms. Kelley, whatever you're going to argue on that point, you should let her know before the evidentiary hearing, all right, since she brought that up. And it confused me as well.

I understand Ms. Kelley's argument with respect to prospective relief. I don't think, you know, that they might become kinship providers again in the future is really, you know, enough for prospective relief. I do understand about ongoing harm to the extent that they're not getting the care plans or their payments that they're entitled to, but I don't think the -- you know, they might be put in the situation again and won't get notice again is much with respect to prospective relief. But of course, you can feel free to convince me otherwise.

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter

THE COURT:  I do not think that she needed the assist that someone else thought she needed.  I thought she handled it beautifully.  I'm going to order you to show the Management Committee this part of the transcript.  She really did a phenomenal job.

MR. PARK:  With pleasure, Your Honor.  I think that everyone here did a wonderful job.

THE COURT:  Yes.  Ms. Kelley, you always do a wonderful job.

MR. PARK:  But if I may, since I already -- I think Your Honor is absolutely right on *The Princess Bride*.

THE COURT:  Yes, thank you.

MR. PARK:  I'm the one who laughed about your closet of holding, so thank you, Your Honor.

THE COURT:  Yes.  Agreed.

All right.  Thank you, everyone.  Great job.

(The proceedings were concluded 4:57 p.m.)

I, Christine Asif, RPR, FCRR, do hereby certify that the foregoing is a correct transcript from the stenographic record of proceedings in the above-entitled matter.

_____/s/_____
Christine T. Asif
Official Court Reporter

Christine T. Asif, RPR, FCRR, Federal Official Court Reporter